UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
M.T.,

                       Plaintiff,

      -against-

CITY OF NEW YORK, CORIZON HEALTH, INC.,
CORIZON, INC., CORRECTION OFFICER L. GALAN,
individually and in his official capacity, and JOHN DOES
1-10, individually and in their official capacities,

                       Defendants.
------------------------------------------------------------------X

Docket No.

**VERIFIED COMPLAINT**

<u>Jury Trial Demanded</u>

      Plaintiff, M.T., by his attorneys, HELD & HINES, LLP, as and for his Verified

Complaint, hereinafter states and alleges as follows upon information and belief:

## <u>PRELIMINARY STATEMENT</u>

      1.     Plaintiff commences this action seeking compensatory damages and attorney's

fees against all defendants, together with punitive damages against the non-municipal

defendants, for violations of his civil, statutory and common law rights by the defendants, while

acting under color of law, as said rights are secured by the Constitution of the United States of

America, 42 U.S.C. §1983 *et seq.*

      2.     Plaintiff also asserts supplemental state law claims against Corizon Health, Inc.

and Corizon, Inc. (collectively "Corizon"), their agents, servants and employees, as well as the

individual defendants acting in their individual capacities for violations of Plaintiff's rights

secured by the Constitution of the State of New York, as well as Article 15 of the New York

State Executive Law ("NYS Human Rights Law"), Section 40 *et seq.* of the New York State

Civil Rights Law (the "NYS Civil Rights Law"), and Sections 8-107 *et seq.*, 8-502 *et seq.* and 8-

603 *et seq.* of the Administrative Code of the City of New York (the "City Human Rights Law"),

Section 500-b of the New York State Correction Law, ("Correction Law"), as well as common law claims of sexual assault and rape, negligence, negligent hiring, training, supervision and retention, intentional and negligent infliction of emotional distress, fraud, failure to protect, and prima facie tort.

3.      The incident alleged herein is part of the City's unwritten policy regarding alternative methods of gaining prisoner "compliance," whereby its correction officers and supervisors resort to cruel, inhumane and dehumanizing brutality against inmates confined to their custody and care. In this instance, Plaintiff was raped and forced to perform oral sex on a male correction officer.

4.      New York State has recognized the coercive power correction officers wield over incarcerated individuals, and the related risk of rape and other sexual abuse, by criminalizing all sexual activity between incarcerated individuals and correctional staff in New York Penal Law §130.05(3)(f), New York Penal Law §130.25(1), and New York Penal Law §130.40(1). The City and Corizon are aware that New York State has identified a significant risk of sexual coercion of individuals in custody, but it nonetheless permits a culture of systemic rape and other sexual abuse of prisoners by correction officers to exist on Rikers Island, in general, and the Robert N. Davoren Complex ("RNDC") in particular.

5.      The pervasive culture of rape and other sexual abuse at RNDC is common knowledge within and without the facility. Correction officers and staff, as well as healthcare workers assigned thereto, know not only that prisoners are regularly abused, but also which officers commit the abuses, which type of prisoners are most often abused, and when and where the abuse occurs.

6.      Supervisory officers, staff and healthcare workers facilitate these rapes and other

sexual abuses by making predictable rounds and otherwise failing to meaningfully oversee correction officers, the facilities, and clinics.

7.     The City facilitates this rape and other sexual abuse by permitting supervisory officers and staff to operate in the manner alleged herein, by failing to monitor (through cameras or otherwise) known at-risk areas, by failing to encourage victims to report rape and sexual abuse, and by failing to post signs throughout Rikers Island and RNDC stating it is a crime for any DOC employee to rape or sexually abuse any inmate.

8.     Corizon facilitates this rape and other sexual abuse by permitting its healthcare workers to operate in the manner alleged herein, by failing to monitor (through cameras or otherwise) known at-risk areas, by failing to require its healthcare workers to report rape and sexual abuse witnessed, by failing to encourage victims to report rape and sexual abuse, and by failing to post signs throughout Rikers Island and RNDC stating it is a crime for any DOC employee to rape or sexually abuse any inmate.

9.     Correction officers use threats, punishment, and other measures to keep prisoners, including Plaintiff, from reporting abuse. Here, Defendant Galan intimidated and coerced Plaintiff by saying that Plaintiff "could do this the easy way or the hard way," intimating he would have Plaintiff beaten up if he resisted or reported his abuse. Defendant Galan then gave Plaintiff an iPod Touch, headphones, charger, case, and approximately $20.00 in cash as an enticement to not report the rape and sexual abuse.

10.    The City fails to protect from retaliation prisoners who report rape and sexual abuse by correction officers, giving correction officers an actual and perceived free hand to retaliate against these prisoners. This retaliation includes threats and other verbal abuse, deprivation of food for extended periods of time, and placing them in punitive segregation based

on false disciplinary charges.

11.     Despite being on notice of the widespread misconduct perpetrated by its correction officers, the City acted with deliberate indifference to the substantial risk of harm to Plaintiff and others in its custody. The City's customs, policies, practices, acts, and omissions allowed Defendant Galan to rape and sexually abuse Plaintiff.

12.     Despite being on notice of the widespread misconduct perpetrated by correction officers within its clinic areas, Corizon acted with deliberate indifference to the substantial risk of harm to Plaintiff and other prisoners. Corizon's customs, policies, practices, acts, and omissions allowed Defendant Galan to rape and sexually abuse Plaintiff.

13.     The City and Corizon remained indifferent to the culture of rape and other sexual abuse on Rikers Island even after Plaintiff reported Galan's sexual misconduct. Rather than taking prompt steps to investigate and punish Galan, the City instead continued to employ Galan at RNDC and permitted other correction officers to intimidate and retaliate against Plaintiff.

## JURISDICTION AND VENUE

14.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343(a)(3) and (4) and the aforesaid statutory and constitutional provisions.

15.     Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over claims which arise under the relevant provisions of New York state law.

16.     Plaintiff's claim for attorneys' fees and costs is predicated upon 42 U.S.C. §1988, which authorizes the award of attorney's fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. §1983, as well as N.Y. C.P.L.R. Art. 86 and City Human Rights Law §8-502(f) for pendent claims arising under New York state and local law.

17.     Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b)(2), as a

substantial part of the events or omissions giving rise to this claim occurred within Bronx County, New York, which is within this judicial district.

**PARTIES**

18.     At all times mentioned herein, the plaintiff was and remains a resident of the State of New York.

19.     At all times mentioned herein, Plaintiff was an inmate classified and assigned by DOC to be housed at RNDC.

20.     Upon information and belief, and at all times mentioned herein, the defendant, City of New York (hereinafter referred to as the "City"), was and remains a body corporate and politic, constituting a municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York.

21.     Upon information and belief, and at all times mentioned herein, the City maintains the New York City Department of Health and Mental Hygiene (hereinafter referred to as the "DOHMH"), pursuant to law.

22.     Upon information and belief, and at all times mentioned herein, DOHMH was and remains under the supervision and control of the City.

23.     Upon information and belief, and at all times mentioned herein, the City maintains Correctional Health Services (hereinafter referred to as the "CHS"), pursuant to law.

24.     Upon information and belief, and at all times mentioned herein, CHS was and remains under the supervision and control of the City.

25.     Upon information and belief, and at all times mentioned herein, DOHMH maintains CHS.

26.     Upon information and belief, and at all times mentioned herein, CHS was and

remains under the supervision and control of DOHMH.

27.     Upon information and belief, and at all times mentioned herein, CHS was and remains an affiliate to and/or part of DOHMH.

28.     Upon information and belief, and at all times mentioned herein, the City maintains the City of New York Department of Correction (hereinafter referred to as the "DOC"), pursuant to law.

29.     Upon information and belief, and at all times mentioned herein, DOC was and remains under the supervision and control of the City.

30.     Corizon Health, Inc. is a foreign corporation organized and existing by virtue of the laws of the State of Delaware, with its principal executive office in Tennessee. Corizon Health, Inc. is authorized to and does transact business in the State of New York.

31.     Corizon, Inc. is a foreign corporation organized and existing by virtue of the laws of the State of Missouri, with its principal executive office in Tennessee. Corizon, Inc. is authorized to and does transact business in the State of New York.

32.     At all times mentioned herein, Plaintiff was confined to the custody, control and care of the City by and through its Department of Correction.

33.     At all times mentioned herein, Defendant, Correction Officer L. Galan (the "defendant officer" or "CO Galan"), was a correction officer[1] employed by the City. CO Galan is being sued herein in his individual and official capacities.

34.     At all times mentioned herein, Corizon Health, Inc. and Corizon, Inc. (collectively "Corizon"), formerly known as Prison Health Services, Inc., its site directors, physicians, nurses, physician assistants, clinicians, therapists, and other medical staff, provided medical, mental

---

[1] As used herein, the term "correction officer" is intended to refer to City of New York Department of Correction officers in the general and not to any specific rank, title or position.

health, dental and ancillary services to inmates at Rikers Island pursuant to a contract with the City, DOHMH and/or CHS.

35.    Defendants John Doe 1-10 are Corizon's site directors, physicians, nurses, physician assistants, clinicians, therapists, and other medical staff (collectively referred to herein as the "defendant healthcare workers") who witnessed and/or were aware of the incident alleged herein; who provided medical, mental health, dental and ancillary services to Plaintiff; who were personally involved in drafting and submitting incomplete, false and/or misleading injury and medical reports; who failed to intervene and/or protect Plaintiff from the incident alleged herein; who denied and/or delayed Plaintiff's access to timely and adequate medical care and treatment following the incident alleged herein; who failed to report or truthfully report the incident alleged herein; and who lied to investigators and/or covered up the truth about the incident alleged herein.

36.    Upon information and belief, and at all times mentioned herein, the City and DOC owned, operated, maintained, managed, supervised, directed and controlled the jail facilities located within the City of New York, including but not limited to those located on Rikers Island.

37.    Upon information and belief, and at all times mentioned herein, the City and DOC owned, operated, maintained, managed, supervised, directed and controlled the clinics located within the jail facilities located on Rikers Island.

38.    Upon information and belief, and at all times mentioned herein, Corizon owned, operated, maintained, managed, supervised, directed and controlled the clinics located within the jail facilities located on Rikers Island.

39.    Upon information and belief, and at all times mentioned herein, the City and DOC were charged with the hiring, training, retention, direction, supervision, discipline, oversight,

appointment and promotion of DOC officers, supervisors and staff in their employ, including but not limited to the defendant officer named herein.

40.     Upon information and belief, and at all times mentioned herein, Corizon was charged with the hiring, training, retention, direction, supervision, discipline, oversight, appointment and promotion of its medical staff assigned to Rikers Island, including but not limited to the defendant healthcare workers named herein.

41.     Upon information and belief, and at all times mentioned herein, the City, through the DOC, managed, supervised, directed and controlled the custody, confinement, care and treatment of those persons confined to its various jails, including but not limited to the plaintiff.

42.     At all times mentioned herein, the defendants assumed the custody and care of the plaintiff.

43.     At all times mentioned herein, the defendants were entrusted with the custody and care of the plaintiff.

44.     At all times hereinafter mentioned, the defendants assumed a duty of care to the plaintiff.

45.     At all times hereinafter mentioned, the defendants owed a duty of care to the plaintiff.

46.     At all times hereinafter mentioned, the defendants owed a special duty of care to the plaintiff.

## STATEMENT OF FACTS

47.     Plaintiff is openly gay.

48.     Plaintiff is transgender.

49.     At all times mentioned herein, Plaintiff was in the process of transitioning into a

woman.

50.     At all times mentioned herein, Plaintiff was confined to the defendants' custody and care at the Robert N. Davoren Complex on Rikers Island.

51.     For several months prior to December 2, 2012, CO Galan openly and repeatedly sexually harassed Plaintiff.

52.     On December 2, 2012, in the clinic area of RNDC, CO Galan forced himself upon Plaintiff. When Plaintiff refused and resisted, Galan stated that Plaintiff "could do this the easy way or the hard way," intimating that he would have Plaintiff beaten up if he resisted or reported his abuse.

53.     Plaintiff did not feel that he could walk away or call out for help because CO Galan was a correction officer and would retaliate against him for refusing him.

54.     CO Galan then forced Plaintiff to perform oral sex on him.

55.     CO Galan then anally raped Plaintiff.

56.     CO Galan then gave Plaintiff an iPod Touch, headphones, charger, case, and approximately $20.00 in cash as an enticement to not report this rape and sexual abuse.

57.     Upon information and belief, the RNDC clinic was not monitored by security cameras.

58.     It is a well-established practice of DOC supervisors, officers and staff to bring prisoners into the facility clinics for the purpose of using force and/or coercive tactics on inmates specifically because the clinic areas are not monitored by security cameras.

59.     It is a well-established practice of DOC supervisors, officers and staff to order Corizon healthcare workers and others present in the clinic areas to leave said area(s) so they can engage in unlawful, forceful and/or coercive tactics on inmates outside the view of monitored

security cameras.

60.     It is a well-established practice of Corizon healthcare workers to leave the clinic area(s) upon being given an order to do so by DOC supervisors, officers and staff, despite knowing and/or having a reasonable belief that DOC supervisors, officers and staff will be using unlawful, forceful and/or coercive tactics on inmates therein.

61.     Upon information and belief, RNDC captains make their rounds at the same time every day. This inadequate supervision made it easy for CO Galan to sexually harass, sexually assault, and rape Plaintiff without being observed.

62.     As a result of the foregoing, abuses by CO Galan, Plaintiff has suffered and continues to suffer severe psychological and emotional distress and physical injuries.

63.     Shortly after the subject incident, Plaintiff was found to be in possession of the iPod Touch given to him by CO Galan and a Notice of Disciplinary Infraction was issued. Plaintiff then informed DOC officials that it was given to him by CO Galan after he sexually assaulted and raped him on December 2, 2012.

64.     Upon information and belief, DOC officials conducted an investigation into CO Galan's sexual assault and rape of Plaintiff.

65.     Upon information and belief, DOC officials referred the matter of CO Galan's sexual assault and rape of Plaintiff to the Inspector General's Office for investigation.

66.     Upon information and belief, agents from the Inspector General's Office interviewed Plaintiff, at which time he told them about the rape and sexual abuse by CO Galan.

67.     Upon information and belief, CO Galan was not prosecuted for his sexual assault and rape of Plaintiff.

68.     Upon information and belief, CO Galan was not disciplined for his sexual assault and rape of Plaintiff.

69.     Upon information and belief, CO Galan's employment was not terminated due to his sexual assault and rape of Plaintiff.

70.     Upon information and belief, none of the defendant healthcare workers were prosecuted for their failure to prevent the sexual assault and rape of Plaintiff.

71.     Upon information and belief, none of the defendant healthcare workers were disciplined for the sexual assault and rape of Plaintiff.

72.     Upon information and belief, none of the defendant healthcare workers' employment was terminated due to the sexual assault and rape of Plaintiff.

73.     The sexual harassment, sexual assault, and rape of inmates by correction officers is endemic on Rikers Island. Plaintiff is just one of the many prisoners who have been victimized by correction officers on Rikers Island.

74.     The sexual abuse experienced by Plaintiff was a common occurrence at RNDC and, upon information and belief, CO Galan himself has made sexual advances toward other prisoners, and, upon information and belief, has abused multiple other prisoners.

75.     According to a 2011-12 survey conducted by the U.S. Department of Justice ("Sexual Victimization in Prisons and Jails Reported by Inmates, 2011-12"), prisoners at Rikers Island facilities, RNDC included, report a significantly higher prevalence of sexual victimization than the national average. According to this survey, 3.1% of RNDC inmates reported staff sexual victimization, compared to 1.8% nationally.

76.     Furthermore, a report by the United States Attorney's Office for the Southern District of New York detailing the results of a recent Rikers investigation conducted pursuant to

the Civil Rights of Institutionalized Persons Act, expressed "concern that DOC may be under-reporting sexual assault allegations." This under-reporting of staff-on-inmate sexual assault suggests that the numerous instances in which correctional staff on Rikers Island have been investigated and convicted of criminal sexual misconduct against inmates represent only a small fraction of the actionable sexual abuse that occurs on Rikers Island.

77.     Upon information and belief, CO Galan's illegal and abusive behavior is common knowledge among the supervisors, officers, healthcare workers, and inmates at RNDC, in part because his conduct is open and notorious and often coordinated with officers and healthcare workers, including but not limited to a close family member who is also a correction officer.

78.     Upon information and belief, the City took no action in response to CO Galan's abuse of Plaintiff.

79.     Upon information and belief, Galan is still employed by the City, works at Rikers Island, is still receiving his benefits and entitled to a pension, and has contact with inmates.

80.     Upon information and belief, no disciplinary action has been taken against CO Galan and he has not been prosecuted for his criminal conduct, even though the City has been on notice of this conduct since December 2012.

81.     On January 2, 2013, Plaintiff caused a Notice of Claim to be filed with the City.

**FIRST CLAIM FOR RELIEF:**
**CLAIMS AGAINST THE CITY OF NEW YORK**
_____

82.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "81", inclusive, of this Complaint, as if same were fully set forth herein.

83.     The City, which, through DOC**,** is responsible for the care, custody, and control of detainees and sentenced inmates, has, through its acts and omissions, facilitated the rape and

sexual abuse of the inmates committed to its custody, including but not limited to the plaintiff.

84.     By its policies, practices, acts, and omissions, the City caused Plaintiff to be subjected to rape and sexual abuse, in violation of his due process rights under the Eighth and/or Fourteenth Amendments to the United States Constitution.

85.     The City's failure to institute adequate safeguards in its hiring practices for correction officers demonstrates its deliberate indifference to the safety and well-being of inmates in its custody.

86.     The City knows that correction officers subject male inmates (homosexual, transgender, and transitioning inmates in particular) to recurrent and ongoing acts of rape and other sexual abuse. These include forced sexual intercourse, oral sexual acts, sexual touching, demeaning sexual comments, and physical and verbal intimidation to deter inmates in custody from reporting such sexual abuse.

87.     Correction officers who rape and sexually abuse inmates routinely leave their assigned posts, allow the abused inmates into areas where they are not permitted, congregate in the facility's clinic and other areas that are known to be outside the view of monitored security cameras, and engage in open and public behavior that is obviously suggestive of inappropriate personal relationships and sexual abuse of inmates. The abusing officers often provide their victims with contraband items. These behaviors are known and visible to staff and prisoners alike. The City has failed to take action despite knowledge of these activities and has not enforced policies intended to identify, address, and prohibit sexual abuse of inmates by correction officers.

88.     The City permits correction officers virtually unfettered access to unmonitored areas such as the facility's clinic, kitchen store rooms, storage closets, and pantries where they

can rape and sexually abuse inmates with minimal risk of detection.

89.     The City has failed to ensure that security cameras are installed in these high risk areas and, where cameras are installed, has failed to ensure that they are functional.

90.     The City has failed to employ obvious measures to reduce the risk of rape and sexual abuse of incarcerated inmates by correction officers, such as heightened monitoring of behavior indicative of ongoing sexual abuse, appropriately placed and functional surveillance cameras installed and maintained without staff knowledge, exit interviews of incarcerated inmates upon transfer or release, random interviews of staff, and more frequent, unannounced rounds by supervisory officials.

91.     The City's system for the reporting and investigation of rape and sexual abuse is grossly inadequate. It relies almost entirely on inmates reporting their own rape and sexual abuse and then fails to take appropriate action to protect those who do come forward or to punish their abusers.

92.     The City has failed to train staff to take reports of rape and sexual abuse seriously and to give adequate weight to the credibility of inmate witnesses.

93.     Pursuant to City policy and practice, inmates who report rape and sexual abuse by correction officers are not protected from retaliation by correction officers and other inmates.

94.     The City does not consistently investigate reports of rape or sexual abuse in a prompt or thorough manner, if at all. Once an inmate reports that he or she has been raped or otherwise sexually abused, weeks can pass before an investigation begins. Regardless of what an investigation reveals, officers are rarely disciplined, and inmates are rarely informed of the outcome.

95.     The City treats inmates as adversaries rather than allies. In the case of Plaintiff,

for example, the City failed to investigate his allegations against CO Galan in a timely manner.

96.     After reporting CO Galan's abuse, Plaintiff actively cooperated with the City. Plaintiff turned over to City investigators the iPod he received from Galan and other items of personal property as verification of the rape and sexual assault. He also made statements to City investigators detailing the abuse.

97.     The City's long-standing failure and/or refusal to supervise the corrections officers and healthcare workers under its control, and its own supervisory staff, is now so institutionalized as to constitute a policy or custom of tolerating and authorizing the type of abuse alleged herein. It is this policy or custom of abuse and cover-up that has caused the deprivation of the plaintiff's rights.

98.     Said policy or custom is further evidenced by frequent and significant findings of misconduct over a period of years by commissioners, command personnel, supervisors, site medical directors, and the officers and healthcare workers they supervise.

99.     The failures and refusals by the City to hold these officers and healthcare workers accountable is a proximate cause of the injuries sustained by the plaintiff, and undoubtedly hundreds of other inmates.

100.    Through promotions and other financial and status incentives, the City has the power to reward officers and healthcare workers who perform their jobs adequately and to punish – or at the very least fail to reward – those who do not. The City's actions and omissions have created and maintained the perception among high-ranking supervisors that a supervisor who turns a blind eye towards evidence of sexual harassment and intimidation, sexual abuse and rape by correction officers, and fails to report or investigate these incidents, will suffer no damage to his or her career or financial penalty.

101.    The pattern of unchecked sexual abuse by officers and the persistent failure or refusal of the City, DOC, DOHMH, and CHS to supervise these persons properly and to take action to curb the misconduct, demonstrates a policy of deliberate indifference which tacitly authorizes the abuses claimed by the plaintiff

102.    The foregoing customs, policies, usages, practices, procedures and rules of the City, DOC, DOHMH, and CHS constituted deliberate indifference to the safety, well-being and constitutional rights of the plaintiff and were the direct and proximate cause of the constitutional violations suffered by the plaintiff as alleged herein.

103.    The foregoing customs, policies, usages, practices, procedures and rules of the City, DOC, DOHMH, and CHS were the moving force behind the constitutional violations suffered by the plaintiff as alleged herein.

104.    As set forth above, the City failed to protect Plaintiff from known and dangerous harms.

105.    As set forth above, the City failed to intervene, mitigate and/or stop the events alleged herein.

106.    As set forth above, the City knew of and consciously disregarded an excessive risk to Plaintiff's health and safety.

107.    Due to the City's practices and policies aforesaid, the plaintiff suffered and continues to suffer physical, psychological and emotional injuries, pain and suffering.

**SECOND CLAIM FOR RELIEF:**
**CLAIMS AGAINST CORIZON**
_____

108.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "107", inclusive, of this Complaint, as if same were fully set forth herein.

109.    At all relevant times, Corizon was acting under color of state law.

110.    At all relevant times, Corizon was performing governmental functions.

111.    At all relevant times, Corizon was performing quasi-governmental functions.

112.    Corizon is responsible for the healthcare and physical and mental well-being of detainees and sentenced inmates at Rikers Island and has, through its acts and omissions, facilitated the rape and sexual abuse of the inmates thereat, including but not limited to the plaintiff.

113.    By its policies, practices, acts and omissions, Corizon and its healthcare workers caused Plaintiff to be subjected to rape and other sexual abuse, in violation of his due process rights under the Eighth and/or Fourteenth Amendments to the United States Constitution.

114.    Corizon's failure to institute adequate safeguards in its hiring practices for its healthcare workers demonstrates its deliberate indifference to the safety and well-being of inmates in its custody.

115.    Corizon and the defendant healthcare workers know that correction officers subject inmates (homosexual, transgender, and transitioning inmates in particular) to recurrent and ongoing acts of rape and other sexual abuse. These include forced sexual intercourse, oral sexual acts, sexual touching, demeaning sexual comments, and physical and verbal intimidation to deter inmates in custody from reporting such sexual abuse.

116.    Corizon and the defendant healthcare workers know that correction officers who rape and sexually abuse inmates routinely leave their assigned posts, allow the abused inmates into areas where they are not permitted, congregate in the facility's clinic and other areas that are known to be outside the view of monitored security cameras, and engage in open and public behavior that is obviously suggestive of inappropriate personal relationships and sexual abuse of

inmates. The abusing officers often escort prisoners to the facility clinics for the purpose of using force and/or coercive tactics on inmates specifically because the clinic areas are not monitored by security cameras. The abusing officers often instruct Corizon healthcare workers to leave the room or clinic entirely prior to using force, coercive tactics and/or engaging in sexually abusive behavior, and Corizon healthcare workers do so despite knowing or having a reasonable belief what the abusive officers intend to do to the inmate. Corizon has failed to report or take any action despite knowledge of these activities and has not enforced policies intended to identify, address, and prohibit sexual abuse of inmates by correction officers.

117.    Corizon permits correction officers virtually unfettered access to unmonitored areas such as each facility's clinic, where they can rape and sexually abuse inmates.

118.    Corizon has failed to employ obvious measures to reduce the risk of rape and sexual abuse of incarcerated inmates by correction officers.

119.    Corizon's system for the reporting and investigation of rape and sexual abuse is grossly inadequate and virtually non-existent. It relies almost entirely on inmates reporting their own rape and sexual abuse.

120.    Corizon has failed to inform and train staff to report rape and sexual abuse witnessed by its staff, as well as to take reports of rape and sexual abuse by the victims and/or inmate witnesses.

121.    Through promotions and other financial and status incentives, Corizon has the power to reward its healthcare workers who perform their jobs adequately and to punish – or at the very least fail to reward – those who do not. Corizon's actions and omissions have created and maintained the perception among high-ranking supervisors that a healthcare worker who turns a blind eye towards evidence of sexual harassment and intimidation, sexual abuse and rape

by correction officers, and fails to report or investigate these incidents, will suffer no damage to his or her career or financial penalty.

122.    The pattern of unchecked sexual abuse by officers and the persistent failure or refusal of Corizon to operate, supervise, maintain and control its clinics properly and to take action to curb the misconduct, demonstrates a policy of deliberate indifference which tacitly authorizes the abuses claimed by the plaintiff

123.    The foregoing customs, policies, usages, practices, procedures and rules of Corizon constituted deliberate indifference to the safety, well-being and constitutional rights of the plaintiff and were the direct and proximate cause of the constitutional violations suffered by the plaintiff as alleged herein.

124.    The foregoing customs, policies, usages, practices, procedures and rules of Corizon were the moving force behind the constitutional violations suffered by the plaintiff as alleged herein.

125.    As set forth above, Corizon, its agents, servants and employees, failed to protect Plaintiff from known and dangerous harms.

126.    As set forth above, Corizon, its agents, servants and employees, failed to intervene, mitigate and/or stop the events alleged herein.

127.    As set forth above, Corizon, its agents, servants and employees, knew of and consciously disregarded an excessive risk to Plaintiff's health and safety.

128.    Due to Corizon's practices and policies aforesaid, the plaintiff suffered and continues to suffer physical, psychological and emotional injuries, pain and suffering.

**THIRD CLAIM FOR RELIEF:**
**CONSPIRACY**

_____

129.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "128", inclusive, of this Complaint, as if same were fully set forth herein.

130.     The defendant officers and healthcare workers, while acting under color of law, conspired to engage in the aforesaid abuses, which are forbidden by the Constitution of the United States.

131.     As set forth above, the defendant officers and healthcare workers, and supervisory staff of both, conspired with and amongst one another to (a) rape and sexually abuse the plaintiff; (b) fail to immediately report the rape and sexual abuse of Plaintiff; (c) cover up and/or minimize the misconduct of the defendant officer; (d) misstate the cause, nature and extent of Plaintiff's injuries in an effort to mitigate the defendant officer's involvement or the extent of damage done; and (e) otherwise deprive the plaintiff of his constitutional, statutory and common law rights.

132.     As a result of the foregoing, Plaintiff suffered and continues to suffer severe and serious physical, psychological and emotional injuries, pain and suffering.

**FOURTH CLAIM FOR RELIEF:**
**CLAIMS AGAINST CORRECTION OFFICER GALAN**

_____

133.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "132", inclusive, of this Complaint, as if same were fully set forth herein.

134.     At all relevant times, CO Galan was acting in his capacity as a correction officer employed by the City.

135.     At all relevant times, CO Galan was acting under color of state law.

136.     CO Galan raped and sexually assaulted Plaintiff as detailed herein.

137.    CO Galan retaliated against Plaintiff for reporting his rape and sexual assault.

138.    By virtue of his rape and sexual assault, and retaliation for reporting same, CO Galan deprived Plaintiff of his due process rights under the Eighth and/or Fourteenth Amendments to the United States Constitution.

139.    As a result of the foregoing, Plaintiff suffered and continues to suffer severe and serious physical, psychological and emotional injuries, pain and suffering.

**FIFTH CLAIM FOR RELIEF:**
**CLAIMS AGAINST JOHN DOES 1-10**
_____

140.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "139", inclusive, of this Complaint, as if same were fully set forth herein.

141.    At all relevant times, the defendant healthcare workers were acting in their official capacities and employed by Corizon and/or the City.

142.    At all relevant times, the defendant healthcare workers were acting under color of state law.

143.    At all relevant times, the defendant healthcare workers were performing governmental functions.

144.    At all relevant times, the defendant healthcare workers were performing quasi-governmental functions.

145.    As set forth above, the defendant healthcare workers failed to protect Plaintiff from known and dangerous harms.

146.    As set forth above, the defendant healthcare workers failed to intervene, mitigate and/or stop the events alleged herein.

147.    As set forth above, the defendant healthcare workers knew of and consciously

disregarded an excessive risk to Plaintiff's health and safety.

148.    By virtue of the foregoing, the defendant healthcare workers deprived Plaintiff of his due process rights under the Eighth and/or Fourteenth Amendments to the United States Constitution.

149.    As a result of the foregoing, Plaintiff suffered and continues to suffer severe and serious physical, psychological and emotional injuries, pain and suffering.

## PENDANT STATE CLAIMS

150.    On January 2, 2013, Plaintiff caused a Notice of Claim to be filed with the City of New York, setting forth the time, place, substance of claim, and description of injuries sustained by the plaintiff.

151.    More than thirty (30) days have elapsed since said date and the City of New York has neglected and refused to make an adjustment thereof.

152.    Upon information and belief, the City of New York did not notice a hearing pursuant to Section 50-h of the General Municipal Law. Accordingly, the City of New York has waived its right to a hearing of Plaintiff.

153.    This action is commenced, including all applicable tolls, within the applicable statutes of limitations.

154.    This action falls within one or more of the exceptions set forth in CPLR §1602.

## FIRST CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
## SEXUAL ASSAULT AND RAPE
_____

155.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "154" inclusive, of this Complaint, as if same were fully set forth herein.

156.    As set forth above, CO Galan did sexually harass and intimidate Plaintiff.

157.    As set forth above, CO Galan did have oral and anal sex with Plaintiff.

158.    As set forth above, Plaintiff did resist having oral and anal sex with CO Galan.

159.    Pursuant to New York Penal Law §130.05(3)(f), Plaintiff, as a matter of law, is deemed incapable of consenting to have sex with CO Galan.

160.    As set forth above, CO Galan did sexually assault and rape Plaintiff.

161.    As set forth above, CO Galan did consciously commit criminal wrongdoing.

162.    As a result of the foregoing, Plaintiff suffered and continues to suffer severe and serious physical, psychological and emotional injuries, pain and suffering.

**SECOND CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: NEGLIGENCE**

163.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "162", inclusive, of this Complaint, as if same were fully set forth herein.

164.    Corizon and the defendant healthcare workers were negligent in the instances alleged herein in their operation, supervision, enforcement, maintenance, management and control of the clinics located at Rikers Island in the general and as it relates to the plaintiff in particular; in failing to act reasonably in the instance; in failing to protect the health and welfare of the plaintiff; in failing to provide the plaintiff with reasonably safe conditions; in failing to quickly and diligently intercede on behalf of Plaintiff; in failing to protect Plaintiff; in setting a trap for the plaintiff; in failing to take cognizance of a dangerous and escalating situation; in failing to be truthful and consistent in reporting officer-on-prisoner sexual violence; in violating the plaintiff's civil, statutory and common law rights; in infringing upon the freedoms afforded to the plaintiff; in being reckless with the plaintiff's health, safety, and security; in causing, creating and/or allowing unlawful conditions to be and remain; in being disinterested, indifferent,

apathetic and/or uninvolved during incidents of officer-on-prisoner sexual violence; in failing to timely prevent and/or mitigate the subject incidents despite having notice, time and opportunity to do so; in failing to give the plaintiff notice and/or warning; in causing and/or allowing the plaintiff to be raped and sexually assaulted; in causing and creating a dangerous condition conducive to causing harm; in causing and creating a dangerous and hazardous condition to exist; in creating and allowing a nuisance to exist; in failing to provide for the safety of the plaintiff; in failing to seek proper training; in failing to be adequately trained; that the alleged incidents could not have occurred but for the negligence, in whole or in part, of Corizon and the defendant healthcare workers; in failing to protect the plaintiff in each and every instance set forth above; in causing, permitting and/or allowing the plaintiff to be sexually harassed, threatened, menaced, sexually assaulted, and raped; in denying and/or delaying the plaintiff's access to timely, due and adequate medical care for the injuries he suffered during the subject incidents; in failing to fully, faithfully and reasonably provide the plaintiff access to necessary medical care; in failing to have an adequate policy to ensure the truthful and consistent reporting of officer-on-prisoner sexual violence; in being deliberately indifferent to the plaintiff's health, safety, and security; in causing and allowing clinic areas to be and remain a violent and dangerous place for prisoners; in causing, creating and/or allowing unlawful conditions to be and remain; in having a policy, either written or by custom, which accepts and/or promotes disinterest, indifference, apathy and/or uninvolvement during incidents of officer-on-prisoner violence; in failing to adequately train their healthcare workers; in failing to have trained personnel; and said defendants were otherwise negligent, careless and reckless in the instance.

165.    Inasmuch as the defendant healthcare workers were acting for, upon, and in furtherance of the business of Corizon and within the scope of their employment, Corizon is

liable under the doctrine of *respondeat superior* for the tortious actions of said persons.

166.    As a result of the foregoing, Plaintiff suffered and continues to suffer severe and serious physical, psychological and emotional injuries, pain and suffering.

**THIRD CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:**
**VIOLATION OF NEW YORK CONSTITUTION AND STATUTES**
_____

167.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "166", inclusive, of this Complaint, as if same were fully set forth herein.

168.    As set forth above, Corizon, CO Galan and the defendant healthcare workers deprived Plaintiff of his rights to be free from gratuitous and excessive force and punishment, to be free from cruel and unusual punishment, to have timely and appropriate medical care, and to due process of law, as guaranteed to him by the Constitution and statutes of the City and State of New York and the Charter of the City of New York.

169.    The aforesaid violations, and the failure of the defendants to take appropriate steps to curb the widespread and continuing pattern of same, violated Plaintiff's rights under the New York State Constitution to due process of law and to be free from degrading treatment and physical abuse.

170.    By their refusal to provide prompt medical attention to plaintiff after he was raped and sexually assaulted, the defendants violated Plaintiff's statutory rights.

171.    The defendants' conduct complained of herein violated Plaintiff's rights secured by the Constitution of the State of New York, Article 15 of the New York State Executive Law, Section 40 *et seq.* of the New York State Civil Rights Law, New York Corrections Law, and Sections 8-107 *et seq.*, 8-502 *et seq.* and 8-603 *et seq.* of the Administrative Code of the City of New York.

172.    As a result of the foregoing, Plaintiff suffered and continues to suffer severe and serious physical, psychological and emotional injuries, pain and suffering.

### FOURTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION

173.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "172", inclusive, of this Complaint, as if same were fully set forth herein.

174.    Corizon was negligent, careless and/or reckless in the hiring, training, retention, supervision, direction, control, appointment and/or promotion of the its agents, servants and employees, in that said employees lacked the experience and ability to be employed by Corizon and/or contracted to the City, DOC, DOHMH and CHS; in failing to exercise due care and caution in their hiring, appointment and promotion practices, and in particular, hiring individuals who lacked the mental capacity and ability to function as employees of said defendant; in that the defendant's employees lacked the maturity, sensibility and intelligence to be employed by said defendant; in that said defendant knew of the lack of ability, experience and maturity of the employees when they hired them; in that said defendant failed to suspend and/or terminate the employees when such action was either proper or required; and in being otherwise careless, negligent and reckless in the instance.

175.    Corizon's failure to adequately train their agents, servants and employees in the exercise of their employment functions, and their failure to enforce the laws of the United States of America, the State of New York and the Charter, rules and regulations of the City of New York, is evidence of the reckless lack of cautious regard for the rights of the prisoners in their custody and Plaintiff in particular, and exhibited a lack of that degree of due care which prudent and reasonable individuals would show.

176.    Corizon knew or should have known in the exercise of reasonable care, the propensities of their agents, servants and employees, to engage in the wrongful conduct heretofore alleged herein.

177.    Corizon knew or should have known that its policies, customs and practices, as well as their negligent hiring, retention, supervision, training, appointment and promotion of their agents, servants and employees, created an atmosphere where the most prominent offenders felt assured that their most brazen acts of abuse, misconduct and neglect would not be swiftly and effectively investigated and prosecuted.

178.    That the mistreatment and abuse of the plaintiff, as set forth above, was the reasonably foreseeable consequence of said defendants' negligent conduct.

179.    The aforesaid negligence of Corizon in its hiring, retention, supervision, training, appointment and promotion practices resulted in the sexual harassment, intimidation, assault and rape of Plaintiff; the abuses of CO Galan being trivialized, minimized and/or covered up; the cause, nature and extent of the plaintiff's injuries being trivialized, minimized and/or covered up; the plaintiff's constitutional, statutory and common law rights to be violated; and Plaintiff to suffer severe and serious physical, psychological and emotional injuries, pain and suffering.

**FIFTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:**
**INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
_____

180.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "179", inclusive, of this Complaint, as if same were fully set forth herein.

181.    As set forth above, the defendants' aforesaid conduct was intentional, malicious and excessive, and served no reasonable or legitimate penological interest.

182.    As set forth above, the defendants' aforesaid conduct was negligent and served no

reasonable or legitimate penological interest.

183.   These defendants' intentional, reckless and/or negligent infliction of emotional and mental distress constituted misconduct of an egregious and outrageous nature that exceeds all bounds usually tolerated by society and unreasonably endangered Plaintiff's physical safety.

184.   As a result of the foregoing, Plaintiff suffered severe and serious physical, psychological and emotional injuries, pain and suffering.

## SIXTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
## FRAUD

185.   Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "184" inclusive, of this Complaint, as if same were fully set forth herein.

186.   CO Galan did knowingly draft and file official reports that contained material misrepresentations of fact.

187.   CO Galan did knowingly give false sworn statements in an effort to mitigate, conceal and/or cover-up his misconduct.

188.   The defendant healthcare workers did knowingly draft and file official reports that contained material misrepresentations of fact in how an injury was sustained, the cause of the injury, the extent of the injury, the manner in which the injury was diagnosed and treated, the condition and manner in which the injured individual presented to the healthcare worker(s), and whether the injured individual was offered, received or declined medical care and/or follow-up medical care.

189.    The defendant healthcare workers did knowingly give false sworn statements in an effort to mitigate, conceal and/or cover-up their own misconduct and CO Galan's misconduct.

190.   As a result of the foregoing, Plaintiff's constitutional, statutory and common law

rights were violated, he was denied due process of law, he received inadequate and incomplete medical care, he was issued disciplinary infractions predicated upon and supported by said defendants' false reports, and he was subjected to disciplinary proceedings where he was invariably found guilty and punished following a spurious hearing.

## SEVENTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: FAILURE TO PROTECT

191.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "190" inclusive, of this Complaint, as if same were fully set forth herein.

192.    As set forth above, the City, Corizon, CO Galan and the defendant healthcare workers failed to protect Plaintiff from known and foreseeable harms, including themselves and each other.

193.    As set forth above, these defendants caused and created the dangerous conditions which gave rise to the incident and injuries alleged herein.

194.    As set forth above, no correction officer, supervisor, or healthcare worker attempted to intervene, mitigate and/or stop the subject incident at any time during the happening of the incident.

195.    As set forth above, these defendants knew of and consciously disregarded excessive risks to Plaintiff's security, health and safety.

196.    That due to said defendants' failure to protect the plaintiff, he suffered and continues to suffer severe and serious physical, psychological and emotional injuries, pain and suffering.

### EIGHTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: PRIMA FACIE TORT
_____

197.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "196" inclusive, of this Complaint, as if same were fully set forth herein.

198.    The aforesaid conduct of CO Galan, other correction officers and supervisors, and the defendant healthcare workers, as well as their delay and failure to act, caused harm to be inflicted upon the plaintiff out of disinterested malevolence and was the proximate cause of the injuries and damages suffered by the plaintiff.

199.    As a result of the foregoing, Plaintiff suffered and continues to suffer severe and serious physical, psychological and emotional injuries, pain and suffering.

### JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues in this matter.

### RELIEF

Plaintiff requests compensatory damages against all defendants in an amount to be determined at trial, punitive damages against the non-municipal defendants in an amount to be determined at trial, attorney's fees, costs and disbursements pursuant to law, and such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
      August 25, 2015

Yours, etc.,

**HELD & HINES, L.L.P.**
*Attorneys for Plaintiff*
2004 Ralph Avenue
Brooklyn, New York 11234
(718) 531-9700
phines@heldhines.com

_____/s/_____
By: Philip M. Hines, Esq.

## <u>ATTORNEY VERIFICATION</u>

PHILIP M. HINES, an attorney duly licensed to practice in the courts of the State of New York, hereby affirms the following under penalties of perjury:

That I am a member of the law firm of HELD & HINES, L.L.P., attorneys for the plaintiff in the within action; that I have read the foregoing VERIFIED COMPLAINT and know the contents thereof; and that the same is true to my own knowledge, except as to the matters therein alleged to be on information and belief, and as to those matters, I believe them to be true. The reason this Verification is made by me and not by the plaintiff is that said plaintiff resides outside of the County in which the Affirmant's office is located.

The grounds of my belief as to all matters stated upon my own knowledge are as follows: the records, reports, contracts, and documents contained in the plaintiff's file.

_____/s/_____
PHILIP M. HINES, ESQ.

Affirmed to this 25th
day of August, 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
M.T.,

                                                      Docket No.

                         Plaintiff,

        -against-

CITY OF NEW YORK, et al.,

                         Defendants.

--------------------------------------------------------------------X

## VERIFIED COMPLAINT

**HELD & HINES, LLP**
**Attorneys for Plaintiff(s)**
**Office & Post Office Address**
**2004 Ralph Avenue**
**Brooklyn, New York 11234**
**(718) 531-9700**

                                           **Signature (Rule 130-1.1-a)**

                                 _____/s/_____
                                  **PHILIP M. HINES, ESQ.**