15-CV-6737 (JMF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

M.T.,

Plaintiff,

-against-

THE CITY OF NEW YORK, et al,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street - Room 3-213*
*New York, NY 10007*

*Of Counsel: Amanda Shoffel*
*Tel: (212) 356-2249*
*Matter No.: 2015-040384*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

STANDARD OF REVIEW ........................................................................................... 5

ARGUMENT ................................................................................................................. 6

      POINT I ............................................................................................................. 6

            PLAINTIFF'S CLAIMS AGAINST THE CITY
            MUST BE DISMISSED BECAUSE THERE IS NO
            EVIDENCE OF RECORD TO SUPPORT HER
            CLAIMS ............................................................................................... 6

            A.    M.T. Fails to Adduce any Evidence of
                  Record to Establish an Unconstitutional
                  Practice So Persistent and Widespread That
                  It Constitutes a Custom or Usage.....................................................8

            B.    Plaintiff Fails to Allege Facts Sufficient to
                  Establish a Failure to Train, Screen or
                   Supervise Rising to the Level of Deliberate
                   Indifference ..................................................................................11

      POINT II ............................................................................................................ 14

            PLAINTIFF'S MONELL CLAIM CANNOT
            SURVIVE ON THE BASIS THAT DOI
            INVESTIGATOR KATE ZDROJESKI
            CONDUCTED AN INADEQUATE
            INVESTIGATION................................................................................. 14

      POINT III............................................................................................................ 16

            PLAINTIFF'S FIRST STATE LAW CLAIM
            MUST BE DISMISSED BECAUSE PLAINTIFF
            CANNOT RECOVER UNDER NEW YORK
            PENAL LAW....................................................................................... 16

**Page**

POINT IV.................................................................................................. 17

       PLAINTIFF'S SECOND AND FOURTH STATE
       LAW CLAIMS AGAINST CORIZON FOR
       NEGLIGENCE AND NEGLIGENT HIRING,
       RETENTION, AND SUPERVISION MUST BE
       DISMISSED ....................................................................... 17

POINT V................................................................................................... 19

       PLAINTIFF'S SIXTH STATE LAW CLAIM FOR
       FRAUD MUST BE DISMISSED.......................................... 19

POINT VI.................................................................................................. 20

       PLAINTIFF'S SEVENTH STATE LAW CLAIM
       FOR FAILURE TO PROTECT MUST BE
       DISMISSED ....................................................................... 20

CONCLUSION........................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Pages**

Amnesty Am. v. Town of W. Hartford,
    361 F.3d 113 (2d Cir. 2004)..................................................................................11

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986).......................................................................................5

Anthony v. City of New York,
    339 F.3d 129 (2d Cir. 2003)..................................................................................16

Bal v. City of New York,
    1995 U.S. Dist. LEXIS 1359 (S.D.N.Y. 1995),
    aff'd, 99 F.3d 402 (2d Cir. 1995)..........................................................................15

Baron v. Pfizer, Inc.,
    820 N.Y.S.2d 841, 12 Misc. 3d 1169(A) (N.Y. App. Div. 2006)...........................19

Bd. of the Cnty. Comms. of Bryan Cnty., Okla. v. Brown,
    520 U.S. 397 (1997)..............................................................................7, 12, 13

Bernstein v. New York,
    591 F. Supp. 2d 448 (S.D.N.Y. 2008)...................................................................15

Blake v. Kelly,
    No. 12-CV-7245, 2014 U.S. Dist. LEXIS 119090 (S.D.N.Y. Aug. 26, 2014).......................21

Board of Regents v. Roth,
    408 U.S. 564 (1972).......................................................................................15

Carey v. Piphus,
    435 U.S. 247 (1978).......................................................................................16

Cash v. County of Erie,
    654 F.3d 324 (2d Cir. 2011)..................................................................................11

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986).......................................................................................5

City of Canton v. Harris,
    489 U.S. 378 (1989)..............................................................................7, 8, 11

City of St. Louis v. Praprotnik,
    485 U.S. 112 (1988).......................................................................................7

Connick v. Thompson,
    563 U.S. 51 (2011)..............................................................................6, 7, 11

**<u>Cases</u>**                                                                                                         **<u>Pages</u>**

Cortes-Quinones v, Jimenez-Nettleship,
    842 F.2d 556 (1st Cir. 1988) ...................................................................................20

DeShaney v. Winnebago Soc. Servs.,
    489 U.S. 189 (1989) ...............................................................................................14

Farmer v. Brennan,
    511 U.S. 825 (1994) ...............................................................................................20

Feerick v. Sudolnik,
    816 F.Supp. 879 (S.D.N.Y. 1993),
    <u>aff'd</u>, 2 F.3d 403 (2d Cir. 1993) ............................................................................15

Gallo v. Prudential Residential Services,
    22 F.3d 1219 (2d Cir. 1994) ....................................................................................6

Giaccio v. City of New York,
    308 Fed. Appx. 470 (2d Cir. 2009) .........................................................................8

Gilmore v. Rivera,
    No. 13-CV-6955, 2014 U.S. Dist. LEXIS 67012 (S.D.N.Y. May 14, 2014) .........21

Gray v. Denny's Corp.,
    535 F. App'x 14 (2d Cir. 2013) .............................................................................17

Griffin v. City of New York,
    67 A.D.3d 550 (1st Dep't 2009) ............................................................................20

Harrington v. County of Suffolk,
    607 F.3d 31 (2d Cir. 2010) .....................................................................................15

Jones v. Town of E. Haven,
    691 F.3d 72 (2d Cir. 2012) ......................................................................................8

Karoon v. New York City Transit Auth.,
    241 A.D.2d 323 (1st Dep't 1997) ..........................................................................20

Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.,
    192 F.3d 337 (2d Cir. 1999) ....................................................................................6

Laroc v. City of New York,
    46 A.D. 3d 760 [2d Dept. 2007] ............................................................................19

Lombard v. Booz-Allen & Hamilton, Inc.,
    280 F. 3d 209 (2d Cir. 2002)) ................................................................................17

**Cases**                                                                              **Pages**

Longi v. County of Suffolk,
  2008 U.S. Dist. LEXIS 25468 (E.D.N.Y. Mar. 27, 2008) ...................................... 16

Marcus v. AT&T Corp.,
  138 F.3d 46 (2d Cir. 1998) .......................................................................... 17

Memphis Community Sch. Dist. v. Stachura,
  477 U.S. 299 (1986) ................................................................................. 16

Monell v. Dep't of Soc. Servcs.,
  436 U.S. 658 (1978) ............................................................................ 6, 16

Newton v. City of N.Y.,
  681 F. Supp. 2d 473 (S.D.N.Y. 2010) ........................................................... 18

Nieves v. Gonzalez,
  2006 U.S. Dist. LEXIS 24302 (W.D.N.Y. 2006) ............................................... 15

Peterec v. Hilliard,
  12 Civ. 3944, 2013 U.S. Dist. LEXIS 132118 (S.D.N.Y. Sept. 16, 2013) .............. 18

Pitchell v. Callan,
  13 F.3d 545 (2d Cir. 1994) ......................................................................... 17

Quaratino v. Tiffany & Co.,
  71 F.3d 58 (2d Cir. 1995) ............................................................................ 6

Qin Chen v. United States,
  494 Fed. Appx. 108 (2d Cir. 2012) ............................................................... 17

Reynolds v. Giuliani,
  506 F.3d 183 (2d Cir. 2007) ..................................................................... 8, 12

Ricciuti v. N.Y.C. Transit Authority,
  941 F.2d 119 (2d Cir. 1991) ......................................................................... 6

Sanchez v. State,
  99 N.Y.2d 247 (N.Y. 2002) ......................................................................... 20

Scott v. City of New York,
  40 A.D. 3d 408 [1st Dept. 2007] .................................................................. 19

Scotto v. Almenas,
  143 F.3d 105 (2d Cir. 1998) ......................................................................... 6

Small v. Lorillard Tobacco Co.,
  94 N.Y.2d 43, 720 N.E.2d 892 (N.Y. 1999) .................................................... 19

**Cases**                                                                                      **Pages**

Sorlucco v. N.Y.C. Police Dep't,
   971 F.2d 864 (2d Cir. 1992)...........................................................................................8

Talavera v. Arbit,
   18 A.D.3d 738 (2d Dep't 2005) ...................................................................................18

Timothy Mc. v. Beacon City Sch. Dist.,
   127 A.D.3d 826 (2d Dep't 2015)..................................................................................18

Twin Laboratories, Inc. v. Weider Health & Fitness,
   900 F.2d 566 (2d Cir. 1990)..........................................................................................6

Walker v. City of New York,
   974 F.2d 293 (2d Cir. 1992)........................................................................................11

Womack v. County of Amador,
   No. S-02-1063, 551 F. Supp. 2d 1017,
   2008 U.S. Dist. LEXIS 17844, 2008 WL 669811 (E.D. Cal. Mar. 7, 2008) ...........................15

Wray v. City of New York,
   490 F.3d 189 (2d Cir. 2007)..........................................................................................6

Ying Jing Gan v. City of New York,
   996 F.2d 522 (2d Cir. 1993)..........................................................................................6

Zahra v. Town of Southold,
   48 F.3d 674 (2d Cir. 1995)............................................................................................8

**Statutes**

28 U.S.C. § 1367.................................................................................................................17

42 U.S.C. § 1983.................................................................................6, 11, 12, 13, 16

Fed. R. Civ. P. 9(b) .............................................................................................................19

Fed. R. Civ. P. 56(c) .......................................................................................................1, 5

General Municipal Law § 50-e[a] [1] ................................................................................19

New York Penal Law Article 175.......................................................................................19

New York Penal Law § 130.05(3)(f) ..................................................................................16

State Penal Law Article 130 ...............................................................................................12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- x

M.T.,

                                  Plaintiff,

               -against-

THE CITY OF NEW YORK; et al,

                            Defendants.

----------------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF THE PARTIAL MOTION FOR SUMMARY JUDGMENT**

**15-CV-6737 (JMF)**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants, City of New York ("City"), Corizon Health Inc. ("Corizon") and Corrections Officer Galan ("Galan") by their attorney, Zachary W. Carter, Corporation Counsel of the City of New York, respectfully submit this memorandum of law in support of their motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

On August 25, 2015, Plaintiff M.T., brought a civil rights lawsuit against the City of New York, Corizon, Correction Officer Luis Galan, and unidentified John Doe defendants. See generally, Exhibit A, Complaint. Plaintiff sets forth the following claims: Count I federal claims against the City of New York; Count II federal claims against Corizon Health, Inc., Count III federal claims for Conspiracy, Count IV federal claims against Officer Galan; Count V federal claims against unidentified John Does; Count I state law claims for sexual assault and rape; Count II state law claims for negligence against Corizon Health Inc.; Count III state law claims for violations of the New York constitution; Count IV state law claims for negligent hiring, retention and supervision against Corizon Health, Inc.; Count V state law claims for

intentional and negligent infliction of emotional distress; Count VI state law claim for fraud against Officer Galan; Count VII state law claims for failure to protect. Pursuant to the Stipulation filed contemporaneously herewith, Plaintiff has dismissed the following: Count II against Corizon Health, Inc., Count III for Conspiracy, Count V against unidentified John Doe defendants; state law claim Count III for violations of the New York constitution; state law claim Count V for intentional and negligent infliction of emotional distress; and state law claim Count VIII for "prima facie tort."

Defendants concede there are material issues of fact which preclude summary judgment on behalf of Correction Officer Galan. However, there is no evidence of record to support Plaintiff's <u>Monell</u> claim in Count I, or the state law claims for rape and sexual assault, fraud, failure to protect, or negligence claims against Corizon. Accordingly, these claims must be dismissed.

## STATEMENT OF FACTS

Plaintiff M.T. is an openly gay, transgender inmate who was confined in the Robert N. Davoren Complex ("RNDC") on Rikers Island in November and December 2012. (Plaintiff's Complaint, (hereinafter "Complaint"), annexed to the Declaration of Amanda C. Shoffel (hereinafter "Shoffel Decl.") as Exhibit A at ¶ 47, 48, 50, 51). Plaintiff M.T. alleges that on December 2, 2012 in the clinic area of RNDC, Correction Officer Luis Galan orally and anally raped her. <u>Id</u>. at ¶ 52, 54, 55. Plaintiff alleges that the City is deliberately indifferent because it maintains inadequate systems for reporting rape. For example, Plaintiff claims DOC failed to conduct exit interviews of inmates or random interviews of staff, and failed to implement appropriate reporting requirements. Exhibit A, Complaint, at ¶ 90, 91.  Plaintiff also alleges the City of New York through its policies, practices, acts, and omissions, caused Plaintiff to be subjected to rape and sexual abuse. <u>Id</u>. at ¶ 84. Deputy Director of Investigation for the

Investigation Division for the Department of Correction is Sean Cussen. Deputy Director Cussen was deposed as a 30(b)(6) Corporate Designee on behalf of the City of New York. (Deposition of Deputy Director Sean Cussen, annexed to Shoffel Decl. as Exhibit B.)

Deputy Director Cussen has worked for the DOC for nine years. He was hired, in part, to implement the Prison Rape Elimination Act (PREA). Exhibit B, Deposition of Director Cussen, at 8:4-10; 58:4-13.  There are a number of different reporting mechanisms for inmates to report allegations of sexual misconduct. For example, there is a hotline by which inmates can call and make a report. Exhibit B, Deposition of Director Cussen, at 58:17-25.  Inmates may also report claims directly to the Department of Investigations, or directly to medical staff. Id., at 59:4-20. Inmates may also file a grievance, which would be forwarded to the Department of Investigations. Id. at 59:21-60:6. DOC also accepts third party complaints of sexual misconduct, meaning reports made by a person other than the inmate on the inmate's behalf. Id. at 60:12-24. Inmates are also given handbooks advising them of their right to report allegations of sexual misconduct, and signs are posted within the facilities regarding this right. Id. at 61:6-15.

Plaintiff also alleges the City has failed to train staff to take reports of rape and sexual abuse, and failed to protect inmates who report sexual abuse from retaliation. Exhibit A, Complaint, at ¶ 92, 93. She claims the City's failure to institute adequate safeguards in its hiring practices for correction officers demonstrates its deliberate indifference to the safety and well-being of inmates in its custody. Exhibit A, Complaint, at ¶ 85.

The entire Department is undergoing PREA training. Members of the Investigations Division particularly have received specialized training for investigating sexual assaults in a confinement setting. The Department has 100% compliance in that training. Exhibit B, Deposition of Director Cussen, at 61:16-62:3.  The Department also has a zero tolerance policy pursuant to Directive 5010, which has been in place since 2008. Id. at 62:4-10.  The

Directive states that every employee of DOC has a responsibility to report sexual abuse. (The City of New York Department of Correction Directive 5010 Preventing Inmate Sexual Assault, annexed to Shoffel Decl as Exhibit C.) It states that all staff will have a clear understanding that sexual contact between an inmate and an employee is sexual abuse that is a felony offense under New York State Penal Law Article 130, and that the Department will pursue criminal charges. Id.

Officer Galan attends yearly training which includes training on any new policies, changes to existing policies, and a refresher on existing policies. (Deposition of Correction Officer Galan, annexed to Shoffel Decl. as Exhibit D, at 75:21-77:19.) This training includes the policies regarding prohibiting and reporting sexual contact with inmates. Id. As a condition to employment with the DOC, Officer Galan submitted to a background check and a psychological test. Exhibit D, Deposition of Officer Galan at 10:9-15; 85:6-19. The background exam included questions regarding family and friends who were incarcerated. Officer Galan did not have any family or friends who were incarcerated. Id. at 10:13-13:3. Officer Galan has never been arrested. Id. at 17:24-18:2. Officer Galan did not fill out any paperwork, or give any statements, related to the underlying incident. He did not submit any paperwork. He did not escort Plaintiff to medical. He was not interviewed by investigators, nor did he give any sworn statements. See generally, Exhibit D, Deposition of Officer Galan at 97:3-12.

Plaintiff claims she had one interaction with CO Galan while incarcerated prior to the allegation of sexual assault. (Deposition of Plaintiff M.T., annexed to Shoffel Decl. as Exhibit E.) She claims during this incident, Officer Galan observed Plaintiff and another inmate in the shower in April or May of 2011. Exhibit E, Deposition of M.T. at 38:4-19. M.T. threatened to report Galan for his behavior. Id. 38:14-40:17. M.T. did not report Galan because

he brought her soda, tobacco, and $15. Id.  She did not have any other conversations or interactions with him until the alleged assault in December 2012. Id. at 40:17-41:10.

Finally, Plaintiff alleges there is a failure to adequately investigate claims of rape or sexual abuse in a prompt or thorough manner, and failed to investigate Plaintiff's claims here in a timely manner. Exhibit A, Complaint at ¶ 94, 95.  However, all complaints of PREA allegations are responded to by the Investigation Division (ID) on a daily basis. Exhibit B, Deposition of Director Cussen, at 25:8-21. Here, the complaint by M.T. was not investigated by ID, but immediately referred to the Department of Investigations, which is under the umbrella of the Inspector General's Office. Id. 21:11-15; 67:5-23.

M.T. first reported the rape on December 6, 2012 to DOC Staff. Exhibit E, Deposition of M.T. at 60:3-18.  Plaintiff told a DOC captain and medical personnel about the incident. Id. at 60:3-5; 62:12-21; 72:2-73:18.  That same day, December 6, 2012, M.T. was seen by medical staff. Id. at 63:1-4. That same day, December 6, 2012, M.T. was interviewed about the allegations of sexual abuse. Id. at 63.

Within ten days, on December 16, 2012, a transfer of CO Galan was requested pending the outcome of the investigation. (Email correspondence between Investigator Kate Zdrojeski and DOC staff requesting a transfer of Officer Galan during the pendency of the investigation, sent December 16 and 17, 2016 annexed to Shoffel Decl. as Exhibit F.)

**STANDARD OF REVIEW**

Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing

- 5 -

the motion. Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995); Twin Laboratories, Inc. v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir. 1990). To survive summary judgment, however, the non-moving party must produce evidence to support his case and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993). Further, evidence that is "merely colorable or not significantly probative" is insufficient to defeat a motion for summary judgment. Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 346 (2d Cir. 1999); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998). At its core, the Court's function in deciding a motion for summary judgment is "issue finding," not "issue resolution." Gallo v. Prudential Residential Services, 22 F.3d 1219, 1224 (2d Cir. 1994).

## ARGUMENT

### POINT I

**PLAINTIFF'S CLAIMS AGAINST THE CITY MUST BE DISMISSED BECAUSE THERE IS NO EVIDENCE OF RECORD TO SUPPORT HER CLAIMS[1]**

Under § 1983, a municipality may not be held liable solely on the basis of *respondeat superior*. Monell v. Dep't of Soc. Servcs., 436 U.S. 658, 693-95 (1978); Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 122 (2d Cir. 1991). Municipalities are, however, liable for "their *own* illegal acts." Connick v. Thompson, 563 U.S. 51, 60 (2011). To hold a city liable under § 1983, a plaintiff must plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007).

---

[1] Plaintiff self identifies with female pronouns and Defendants accordingly use such herein.

Case law has delineated four municipal actions that may give rise to *Monell* liability if adequately alleged: (1) an unconstitutional policy enacted by the municipality, <u>Bd. of the Cnty. Comms. of Bryan Cnty., Okla. v. Brown</u>, 520 U.S. 397, 404-05 (1997); (2) a deliberate unconstitutional act by a municipal official with policy making authority, *id*. at 405; (3) an unconstitutional practice or custom that is "so persistent and widespread as to practically have the force of law," <u>Connick</u>, 563 U.S. at 61; or (4) a failure to train municipal employees such that the failure rises to the level of deliberate indifference to the constitutional rights of others, <u>City of Canton v. Harris</u>, 489 U.S. 378, 388-89 (1989). A plaintiff seeking to hold a municipality liable must further demonstrate "a direct causal link between the municipal action and the deprivation of [plaintiff's] federal rights." <u>Brown</u>, 520 U.S. at 404. The "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." <u>Id.</u> at 405; <u>see also</u> <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

M.T. appears to advance two theories of *Monell* liability. Her first is based on the alleged existence of an unconstitutional pattern and practice of inadequate reporting systems, inadequate and untimely investigations of claims of sexual abuse, and financial incentives which allegedly encourage staff to "turn a blind eye" to allegations of sexual misconduct. Complaint ¶ 90, 91, 94, 95, 100. M.T.'s second theory is that the City failed to properly train, screen, supervise, or discipline employees regarding the obligations to protect inmates and report allegations of sexual abuse. Complaint ¶ 92, 93, 100. In both cases, M.T. alleges that City "customs, policies, usages, practices, procedures... were the moving force behind the

constitutional violations suffered by the plaintiff as alleged herein." Complaint ¶ 103. For the reasons that follow, both theories fail as a matter of law.

### A.   M.T. Fails to Adduce any Evidence of Record to Establish an Unconstitutional Practice So Persistent and Widespread That It Constitutes a Custom or Usage

A municipality may be found to have a custom that causes a constitutional violation when "faced with a pattern of misconduct [it] does nothing, compelling the conclusion that [it] has acquiesced in or tacitly authorized its subordinates' unlawful actions." Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007); see also Sorlucco v. N.Y.C. Police Dep't, 971 F.2d 864, 870-71 (2d Cir. 1992) ("So long as the [unlawful] practices of city officials are persistent and widespread, they could be so permanent and well settled as to constitute a custom or usage with the force of law, and thereby generate municipal liability.") (internal citations and quotations omitted). "Isolated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." Jones v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012); Giaccio v. City of New York, 308 Fed. Appx. 470, 472 (2d Cir. 2009). Moreover, "[t]he mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995); see also City of Canton, 489 U.S. at 394-95 (O'Connor, J., concurring in part and dissenting in part) ("Where . . . a claim of municipal liability is predicated upon a failure to act, the requisite degree of fault must be shown by proof of background events and circumstances which establish that the 'policy of inaction' is the functional equivalent of a decision by the city itself to violate the Constitution.").

Here, the only facts offered to support the existence of a custom or practice of tolerating or encouraging sexual abuse are those alleged by Plaintiff in conclusory fashion in the

Complaint. The only evidence of record supports the City's position that there are appropriate policies and procedures in place to report, punish, and deter allegations of rape and/or sexual misconduct. The Deputy Director of Investigation for the Investigation Division for DOC is Sean Cussen. Deputy Director Cussen was deposed as a 30(b)(6) Corporate Designee on behalf of the City of New York. Deputy Director Cussen has worked for the DOC for nine years. He was hired, in part, to implement the Prison Rape Elimination Act (PREA). See, Exhibit B, Deposition of Director Cussen, at 8:4-10; 58:4-13.

Plaintiff alleges that the City is deliberately indifferent because it maintains inadequate systems for reporting rape. For example, Plaintiff claims DOC failed to conduct exit interviews of inmates or random interviews of staff, and failed to implement appropriate reporting requirements. See, Exhibit A, Complaint, at ¶ 90, 91. However, Deputy Director Cussen testified that there are a number of different reporting mechanisms for inmates to report allegations of sexual misconduct. For example, there is a hotline by which inmates can call and make a report. See, Exhibit B, Deposition of Director Cussen, at 58:17-25. Inmates may also report claims directly to the Department of Investigations, or directly to medical staff. Id. at 59:4-20. DOC also accepts reports made by third parties, meaning a person other than the inmate may report an allegation on the inmate's behalf. Id. at 60:12-24. Inmates are also given handbooks advising them of their right to report allegations of sexual misconduct, and signs are posted within the facilities regarding this right. Id. at 61:6-15.

Plaintiff also alleges a widespread failure to investigate claims of rape or sexual abuse promptly or thoroughly, and that the City failed to investigate Plaintiff's claims here in a

timely manner.[2] See, Exhibit A, Complaint, at ¶ 94, 95. Deputy Director Cussen testified that all complaints of PREA allegations are responded to by the Investigation Division (hereinafter "ID") on a daily basis. See, Exhibit B, Deposition of Director Cussen, at 25:8-21. Here, the complaint by M.T. was not investigated by ID, but immediately referred to the Department of Investigations (hereinafter, "DOI"), which is under the umbrella of the Inspector General's Office. Id. at 21:11-15; 67:5-23. M.T. first reported the alleged rape on December 6, 2012 to DOC Staff. See, Exhibit E, Deposition of M.T. at 60:3-18. That same day, December 6, 2012, M.T. was seen by medical staff. Id. at 63:1-4. Also that same day, December 6, 2012, M.T. was interviewed by staff about the allegations of sexual abuse. Id. at 63. Within ten days, on December 16, 2012, DOC staff requested a transfer of CO Galan to another facility pending the outcome of the investigation. See, Exhibit F, email correspondence between Investigator Kate Zdrojeski and DOC staff requesting a transfer of Officer Galan during the pendency of the investigation, sent December 16 and 17, 2016.

Finally, Plaintiff alleges that through a custom of promotions and other financial incentives, the City may reward or punish officers, "who turn a blind eye" towards sexual intimidation, harassment, and abuse. See, Exhibit A, Complaint, at ¶ 100. Deputy Director Cussen testified that the salaries of correction officers and Assistant Deputy Wardens are set by contract. See, Exhibit B, Deposition of Director Cussen at 65:13-21. There are no financial incentives available for either of these positions. Id. Plaintiff simply has no evidence of record to support any of the allegations in her Complaint of an unconstitutional custom, practice or policy regarding sexual misconduct of correctional officers.

---

[2] This allegation is also insufficient to support a claim for municipal liability, for reasons more fully discussed in Section I, *infra*.

**B.      Plaintiff Fails to Allege Facts Sufficient to Establish a Failure to Train, Screen or Supervise Rising to the Level of Deliberate Indifference**

"[T]he inadequacy of [officer] training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officer] come into contact." City of Canton, 489 U.S. at 388; see also Connick, 563 U.S. at 61 (noting that "a municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."). To meet this stringent standard of fault, M.T. must show that: "(1) policymaker knows to a moral certainty that its employees will confront a given situation; (2) either situation presents employees with difficult choice that will be made less so by training or supervision, or there is a record of employees mishandling situation; and (3) wrong choice by employees will frequently cause deprivation of constitutional rights." Cash v. County of Erie, 654 F.3d 324, 333-334 (2d Cir. 2011) (quoting Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992)). Municipal liability will not attach without "identify[ing] a specific deficiency in the city's training program and establish[ing] that [the] deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 129-30 (2d Cir. 2004).

M.T.'s second theory of liability- that the City failed to properly train, screen, supervise, or discipline employees regarding the obligations to protect and report allegations of sexual abuse- is similarly without any evidentiary support in the record. See, Exhibit A, Complaint ¶ 92, 93, 100.

Deputy Director Cussen testified that the entire Department is undergoing PREA training. See, Exhibit B, Deposition of Director Cussen, at 61:16-62:3 Members of the Investigations Division particularly have received specialized training for investigating sexual assaults in a confinement setting. Id. The Department has 100% compliance in that training. Id.

The Department also has a zero tolerance policy pursuant to Directive 5010, which has been in place since 2008. Id at 62:4-10. The Directive states that every employee of DOC has a responsibility to report sexual abuse. See, Exhibit C, The City of New York Department of Correction Directive 5010 on Preventing Inmate Sexual Assault. It states that all staff will have a clear understanding that sexual contact between an inmate and an employee is sexual abuse that is a felony offense under New York State Penal Law Article 130, and that the Department will pursue criminal charges. Id. Additionally, Officer Galan attends yearly training which includes training on any new policies, changes to existing policies, and a refresher on existing policies. See, Exhibit D, Deposition of Correction Officer Galan, at 75:21-77:19. This training includes the policies regarding prohibiting and reporting sexual contact with inmates. Id. That Plaintiff may recommend improvements to an existing training program or policy, does not, without more, give rise to a plausible inference of deliberate indifference on the part of the City. Boddie, 2016 U.S. Dist. LEXIS 50248, at *13-*14 (citing Reynolds v. Giuliani, 506 F.3d 183, 193 (2d Cir. 2007).

Plaintiff also alleges that DOC fails to screen its employees adequately before hiring them. Exhibit A, Complaint, at ¶ 85. But this theory has minimal application following the Supreme Court's decision in Bd. Of the County Comm'rs v. Brown, 520 U.S. 397 (1997). In that matter, a plaintiff brought a damages action under 42 U.S.C. § 1983 alleging, among other things, that the county deputy had arrested her with excessive force, and that the county was liable for her injuries because its sheriff had hired the deputy without adequately reviewing his background, including a criminal record reflecting various driving infractions and other misdemeanors including assault and battery. In assessing the case, the Court outlined the challenge presented by this failure-to-screen type claim:

> Where a plaintiff presents a § 1983 claim premised upon the inadequacy of an official's review of a prospective applicant's record, however, there is a particular danger that a municipality will be held liable for an injury not directly caused by a deliberate action attributable to the municipality itself. Every injury suffered at the hands of a municipal employee can be traced to a hiring decision in a "but-for" sense: But for the municipality's decision to hire the employee, the plaintiff would not have suffered the injury. To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged.

Brown, 520 U.S. at 410. The Court went on to state that "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" Id. at 411. Thus, in the case before them, the proper inquiry was whether a full review of the deputy's record reveals that the sheriff should have concluded that the deputy's use of excessive force would be a plainly obvious consequence of the hiring decision. Id. at 412-413. Having considered the record in question, the Court held that while the deputy's criminal history may have made him a poor candidate for the deputy job, nothing in the record demonstrated such a strong propensity for violence that a later application of excessive force was highly likely. Id. at 414.

Plaintiff cannot satisfy the stringent standards of culpability and causation set forth in Brown. Specifically, the "significant red flags" outlined in the report—e.g., prior arrests, "low personality development," relationships with friends or relatives who had been incarcerated, and/or a significant personal debt—are not the types of background issues that demonstrate a strong propensity for violence.  Thus, even if applicants with these "significant red flags" were inadequately screened because of deficient hiring practices, it would not constitute deliberate indifference to a DOC inmates' federally protected right to be free from a use of

inappropriate force or sexual contact. M.T. has failed to connect any alleged shortcomings in DOC's recruiting and hiring process to his own incident in another way. In any event, as a condition to employment with the DOC, Officer Galan submitted to a background check and a psychological test. See, Exhibit D, Deposition of Officer Galan, at 10:9-15; 85:6-19. The background exam included questions regarding family and friends who were incarcerated. Id. Officer Galan did not have any family or friends who were incarcerated. Id. at 10:13-13:3. Officer Galan has never been arrested. Id. at 17:24-18:2.

Because M.T. does not plausibly allege that the City was on notice of the deficiencies in its hiring process at the time of her injury, and because those deficiencies do not constitute deliberate indifference to a DOC inmates' right to be free from a constitutional violation, M.T.'s Monell claim fails as a matter of law.

## POINT II

### PLAINTIFF'S MONELL CLAIM CANNOT SURVIVE ON THE BASIS THAT DOI INVESTIGATOR KATE ZDROJESKI CONDUCTED AN INADEQUATE INVESTIGATION

The only evidence of record Plaintiff can point to in support of her municipal liability claim is the allegation that the investigation of Kate Zdrojeski from the Department of Investigation was inadequate. This argument fails for two reasons. First, there is no constitutional right to an investigation, adequate or otherwise. Second, a failure to adequately investigate allegations of criminal conduct may not form the basis of a Monell claim for municipal liability.

First, there is no constitutional right to an adequate investigation. "[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." DeShaney v. Winnebago Soc. Servs., 489 U.S. 189, 196, (1989).

"[C]ourts within the Second Circuit have determined that '[t]here is . . . no constitutional right to an investigation by government officials." Thus, there is no constitutional violation where the government declines to investigate a particular matter, or is alleged to have done so inadequately. Bernstein v. New York, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008), citing Nieves v. Gonzalez, 2006 U.S. Dist. LEXIS 24302 (W.D.N.Y. 2006) (quoting Bal v. City of New York, 1995 U.S. Dist. LEXIS 1359 (S.D.N.Y. 1995), aff'd, 99 F.3d 402 (2d Cir. 1995)). See generally Harrington v. County of Suffolk, 607 F.3d 31, 35 (2d Cir. 2010) (state law giving police department authority to investigate crimes "does not give plaintiffs or any other victim of a crime 'a legitimate claim of entitlement' to a police investigation, much less an investigation conforming with certain minimal standards") (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)).

Second, to the extent Plaintiff claims the inadequate investigation by an investigator of DOI supports her Monell claim, that claim is well-settled and unavailing as well. She may not hold the City liable for the acts of individuals who are not municipal policymakers, or for the misconduct of non-supervisory employees:

> To the extent plaintiff seeks to establish municipal liability against the County or the Suffolk County District Attorney based on his assertion that the District Attorney's Office has a custom, policy and/or practice with respect to the alleged inadequate investigations by Gardner and Calabrese, those claims are without merit. Plaintiff has not established the existence of a formal policy officially endorsed by the County or the Suffolk County District Attorney, or that the County or District Attorney took any direct action with respect to the investigations. Thus, municipal liability, if any, must be based on the specific actions of an official with final policymaking authority. See Barrett, 194 F.3d at 350. The only individuals identified by plaintiff with respect to the investigations are Gardner and Calabrese, who, as investigators, do not have final policymaking authority in the District Attorney's Office. See, e.g. Feerick v. Sudolnik, 816 F.Supp. 879, 886-887 (S.D.N.Y. 1993), aff'd, 2 F.3d 403 (2d Cir. 1993) (dismissing the plaintiff's claims against the assistant district attorneys on the basis that they were not municipal policymakers); Womack v. County of Amador, No. S-02-1063, 551 F. Supp. 2d 1017, 2008 U.S. Dist. LEXIS 17844, 2008 WL 669811, at * 8 (E.D. Cal. Mar. 7, 2008) (finding that a district attorney investigator did not have final policymaking authority); see

- 15 -

generally Monell, 436 U.S. at 691, 98 S.Ct. 2018 (holding that municipal liability may not be based solely on the misconduct of non-supervisory employees); Anthony v. City of New York, 339 F.3d 129, 139 (2d Cir. 2003) (holding that "[A]n official has final [policymaking] authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions"). Accordingly, plaintiff has not established a Monell claim against any of the County defendants with respect to his claims relating to the investigations.

Longi v. County of Suffolk, 2008 U.S. Dist. LEXIS 25468, 21-22 (E.D.N.Y. Mar. 27, 2008). Accordingly, Plaintiff's Monell claim against the City of New York cannot be maintained on this basis, and fails as a matter of law.

## POINT III

### PLAINTIFF'S FIRST STATE LAW CLAIM MUST BE DISMISSED BECAUSE PLAINTIFF CANNOT RECOVER UNDER NEW YORK PENAL LAW

Plaintiff includes a claim for rape, citing to New York Penal Law § 130.05(3)(f). Civil actions brought under § 1983 are analogous to state common law tort actions, serving primarily the tort objective of compensation. See Carey v. Piphus, 435 U.S. 247, 254 (1978); see also Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 307 (1986) ("Deterrence is also an important purpose of this system, but it operates through the mechanism of damages that are compensatory—damages grounded in determinations of plaintiffs' actual losses."). There is no compensatory remedy available to Plaintiff under the New York Penal Law for criminal charges, or lack thereof. The vehicle for her allegations are claims under § 1983 or tort law. This claim must be dismissed.

**POINT IV**

**PLAINTIFF'S SECOND AND FOURTH STATE LAW CLAIMS AGAINST CORIZON FOR NEGLIGENCE AND NEGLIGENT HIRING, RETENTION, AND SUPERVISION MUST BE DISMISSED_____**

As an initial matter, where the federal claims are dismissed before trial, any pendent state law claims should be dismissed as well. Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998); see also Pitchell v. Callan, 13 F.3d 545, 549 (2d Cir. 1994) ("it is axiomatic that a court should decline to exercise jurisdiction over state-law claims when it dismisses the federal claims prior to trial"). Plaintiff has stipulated to dismiss the federal claims against Corizon, thus plaintiff's state law negligence claims are the only ones that remain. These state law claims are before this Court solely under the supplemental jurisdiction statute, see 28 U.S.C. § 1367, and should be dismissed because the federal claims have been dismissed.

Should the Court consider these claims, it is of note that Plaintiff has sued Corizon itself, but no individual Corizon employees, based on a theory of negligence and negligent hiring/retention. Both claims should be dismissed.  "Under New York law, the elements of a negligence claim are: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." Gray v. Denny's Corp., 535 F. App'x 14, 15 (2d Cir. 2013) (quoting Lombard v. Booz-Allen & Hamilton, Inc., 280 F. 3d 209, 215 (2d Cir. 2002)).

In New York, "a correctional facility 'owes a duty of care to safeguard inmates.'" Qin Chen v. United States, 494 Fed. Appx. 108, 109 (2d Cir. 2012). "This does not, however, render a correctional facility an insurer of inmate safety." Qin Chen v. United States, 494 F. Appx at 109 . Rather, "[t]he scope of the duty is 'limited to risks of harm that are reasonably foreseeable.' "Foreseeability is defined by actual or constructive notice." Id.

Similar to the finding in <u>Qin Chen</u>, it is completely unforeseeable that medical providers would have notice of an alleged assault by a third party. "While one could argue, with the benefit of hindsight, that [a Bureau of Prisons counselor] should have done things differently, we cannot conclude that a reasonable corrections officer should have foreseen [an inmate assault]." <u>Id</u>. (holding that the counselor "was not negligent as a matter of law."). Here, there is no basis for the claim that an alleged assault by a corrections officer was foreseeable. Additionally, Plaintiff has not identified any Corizon staff that were allegedly negligent in failing to foresee this assault. It is undisputed that CO Galan is employed by DOC, and not an employee of Corizon. Similarly, Plaintiff's claims for negligent hiring, retention and supervision against Corizon must fail.

Under New York law, "a claim for negligent hiring or retention can only proceed against an employer for an employee acting outside the scope of [his] employment." <u>Peterec v. Hilliard</u>, 12 Civ. 3944, 2013 U.S. Dist. LEXIS 132118 (S.D.N.Y. Sept. 16, 2013) (quoting <u>Newton v. City of N.Y.</u>, 681 F. Supp. 2d 473, 488 (S.D.N.Y. 2010). "Generally, where an employee is acting within the scope of his or her employment, the employer is liable for the employee's negligence under a theory of *respondeat superior* and no claim may proceed against the employer for negligent hiring, retention, supervision or training." <u>Timothy Mc. v. Beacon City Sch. Dist.</u>, 127 A.D.3d 826, 829, (2d Dep't 2015) (quoting <u>Talavera v. Arbit</u>, 18 A.D.3d 738, 738 (2d Dep't 2005)). It is undisputed that there are no employees of Corizon who are defendants in this action. Plaintiff cannot maintain a cause of action against Corizon on this basis.

**POINT V**

**PLAINTIFF'S SIXTH STATE LAW CLAIM
FOR FRAUD MUST BE DISMISSED**

Plaintiff also alleges Officer Galan knowingly gave false statements in official reports. See, Exhibit A, Complaint at ¶ 186. For the reasons explained, *supra*, filing false statements is a criminal offense under the New York Penal Law Article 175 for which Plaintiff cannot recover in a civil case.

Should the Court consider this claim as a common law fraud claim, to successfully plead fraud, a plaintiff must plead each element with specificity and particularity. See, Baron v. Pfizer, Inc., 820 N.Y.S.2d 841, 12 Misc. 3d 1169(A) (N.Y. App. Div. 2006) (holding that New York law requires a cause of action for fraud be pled with greater specificity than other causes of action (citing Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 57, 720 N.E.2d 892, 898 (N.Y. 1999)); see also Fed. R. Civ. P. 9(b) (requiring that fraud claims be pleaded "with particularity").

Plaintiff's Notice of Claim failed to include any claim for fraud. See, Exhibit No. 1 to Docket Entry No. 61. Pursuant to General Municipal Law § 50-e[a] [1], service of a notice of claim within 90 days is a condition precedent to the commencement of a tort action against the City. Laroc v. City of New York, 46 A.D. 3d 760 [2d Dept. 2007]. "Causes of action for which a notice of claim is required which are not listed in plaintiff's original notice of claim may not be interposed." Scott v. City of New York, 40 A.D. 3d 408, 409 [1st Dept. 2007]. Plaintiff's failure to identify this claim means she is barred from asserting it in her Complaint three years after the incident.

Finally- and most compellingly- there is no evidence of record to support this claim. Plaintiff alleges CO Galan, "file[d] official reports that contained material

misrepresentations of fact" and that he, "knowingly [gave] false sworn statements in an effort to mitigate, conceal and/or cover-up his misconduct." <u>See</u>, Exhibit A, Complaint at ¶ 186. It is uncontested that Officer Galan did not fill out any paperwork, or give any statements, related to the underlying incident. He did not submit any paperwork. He did not escort Plaintiff to medical. <u>See generally</u>, Exhibit D, Deposition of Officer Galan at 97:3-12. He was not interviewed by investigators, nor did he give any sworn statements. There was no criminal prosecution. There is no evidence of record to support Plaintiff's allegation of fraud, and it must be dismissed.

**POINT VI**

**PLAINTIFF'S SEVENTH STATE LAW CLAIM FOR FAILURE TO PROTECT MUST BE DISMISSED[3]**

"'[P]rison officials have a duty ... to protect prisoners *from violence at the hands of other prisoners*.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994) (emphasis added) (quoting <u>Cortes-Quinones v. Jimenez-Nettleship</u>, 842 F.2d 556, 558 (1st Cir. 1988)). As an initial matter, this claim must be dismissed: Plaintiff does not allege she suffered harm at the hands of another prisoner. She alleges the assault occurred because of Officer Galan. The appropriate vehicle for

---

[3] Defendants are not aware of a state cause of action for failure to protect. <u>See</u>, <u>Sanchez v. State</u>, 99 N.Y.2d 247 (N.Y. 2002) (construing a state law claim against the City for the failure to protect an inmate from an assault as one for negligent supervision). To the extent Plaintiff intended to assert a negligent retention, hiring, training, and supervision claim against the City, this claim must also be dismissed:

> "We find that defendants are entitled to summary judgment dismissing plaintiff's negligent hiring, retention and training claims. Generally, where an employee is acting within the scope of his or her employment, thereby rendering the employer liable for any damages caused by the employee's negligence under a theory of respondeat superior, no claim may proceed against the employer for negligent hiring or retention.

<u>Karoon v. New York City Transit Auth.</u>, 241 A.D.2d 323, 324 (1st Dep't 1997) (citations omitted). <u>See also Griffin v. City of New York</u>, 67 A.D.3d 550, 551 (1st Dep't 2009). Plaintiff's claim fails as she has asserted a *respondeat* claim against the City of New York which is not at issue, and the individual defendant is represented. Accordingly any claims construed for negligent retention, hiring, training and supervision must be dismissed. To the extent Plaintiff intended to assert a claim for failure to protect under federal law, this claim should be dismissed for the reasons briefed *supra*.

- 20 -

claims against a state actor are the Eighth and Fourteenth Amendments. Should the Court look beyond this basic constitutional premise, Plaintiff's claims still must fail.

With respect to the first prong of a failure to protect claim, "[g]enerally, in assessing whether the risk of an inmate's violence against other inmates is sufficiently serious to trigger constitutional protection, the focus of inquiry must be, not the extent of the physical injuries sustained in an attack, but rather the existence of a substantial risk of serious harm." Blake v. Kelly, No. 12-CV-7245, 2014 U.S. Dist. LEXIS 119090 (S.D.N.Y. Aug. 26, 2014). "A substantial risk of serious harm can be demonstrated where there is evidence of a previous altercation between a plaintiff and an attacker, coupled with a complaint by plaintiff regarding the altercation or a request by [a] plaintiff to be separated from the attacker." Gilmore v. Rivera, No. 13-CV-6955, 2014 U.S. Dist. LEXIS 67012 (S.D.N.Y. May 14, 2014).

Here, Plaintiff states on the record that she had no altercation with Correction Officer Galan prior to the alleged assault in December 2012. She identifies one prior encounter with Officer Galan. She claims during this incident, Officer Galan observed Plaintiff and another inmate in the shower in April or May of 2011. Exhibit E, Deposition of M.T. at 38:4-19. M.T. threatened to report Galan for his behavior. Id. 38:14-40:17. M.T. did not report Galan because he brought her soda, tobacco, and $15. Id. She did not have any other conversations or interactions with him until the alleged assault in December 2012. Id. at 40:17-41:10.

Plaintiff admits in her deposition that she did not report this incident. Id. 38:14-40:17. Even if she had, the incident described is not an altercation which would have provided notice of a dangerous environment. Thus, she cannot show facts that plausibly suggest that any individual or the City had knowledge of an excessive risk to Plaintiff's safety, or that it was caused at the hands of another inmate.

- 21 -

## <u>CONCLUSION</u>

There is no evidence of record to support Plaintiff's <u>Monell</u> claim, or state law claims for rape, fraud, failure to protect claim and negligence against Corizon. For these reasons, summary judgment should be granted in favor of the defendants.

Dated:      New York, New York
            October 6, 2016

ZACHARY W. CARTER
Corporation Counsel of the City of New York
100 Church Street, 3rd Floor
New York, New York 10007
(212) 356-2249


By:         /s/
           Amanda C. Shoffel
           Assistant Corporation Counsel