UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
M.T.,

                              Plaintiff,                          15 Civ. 6737 (JMF)

      - against -

CITY OF NEW YORK, CORIZON HEALTH, INC.,
CORIZON, INC., CORRECTION OFFICER L. GALAN,
individually and in his official capacity, and JOHN
DOES 1-10, individually and in their official capacities.

                              Defendants.
------------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AND IN REPLY TO DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION SEEKING SPOLIATION SANCTIONS**

HELD & HINES, LLP
*Attorneys for Plaintiff*
2004 Ralph Avenue
Brooklyn, New York 11234

By: Philip M. Hines, Esq.
Frank B. Poe, Esq.

This is page 2 of 32.

# Contents

PRELIMINARY STATEMENT ................................................................................................ 1

COUNTER-STATEMENT OF FACTS ................................................................................... 2

ARGUMENT ........................................................................................................................... 2

LEGAL STANDARD .............................................................................................................. 2

    A.   Officer Galan's Rape of Plaintiff Was Part of a Long-Standing, Well-Reported, Widespread Practice of Sexual Victimization at DOC Facilities ............................................... 5

    B.   Defendants' Failure to Train And Supervise Corrections Officers Who Sexually Assault Inmates Gives Rise to a Level of Deliberate Indifference of the City ........................................ 9

    C.   The City's Deliberate Indifference to Sexual Victimization of Prisoners by Officers Is Evident in Its Investigations ................................................................................................... 11

II.    DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS OF SEXUAL ASSAULT AND RAPE ................................................. 13

III.    CORIZON IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW CLAIMS ...................................................................................................... 13

IV.    PLAINTIFF'S CLAIM FOR FRAUD MUST NOT BE DISMISSED ............................ 15

V.    PLAINTIFF HAS STATED A CLAIM FOR A FAILURE TO PROTECT ..................... 16

DEFENDANTS SHOULD BE SANCTIONED FOR ............................................................. 18

SPOLIATION OF CRITICAL EVIDENCE IN THIS MATTER .......................................... 18

    *A. Defendants' opposition to Plaintiff's motion seeking sanctions should not be considered by the Court as it contains conclusory legal arguments predicated upon unsworn statements of unsupported facts.* ........................................................................................................... 18

    *B. It would be an injustice to permit the amendment to Rule 37(e) to apply in this case.* ........ 23

    *C.   The Department of Correction has a pattern and practice of destroying video recordings as they have no written policy or procedure with respect to retention and preservation.* ............................................................................................................. 26

CONCLUSION ...................................................................................................................... 28

## Table of Authorities

**Cases**

. Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 215 (2d Cir. 2002). .......................... 15

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). ................................................ 3

Barrett v. Orange County Human Rights Comm'n, 194 F.3d 341, 350 (2d Cir. 1999. ................. 4

Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397 (1997) ................................. 4

Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 409 (1997)) ......................... 10

Blake v. Kelly, No. 12-CV-7245, 2014 U.S. Dist. LEXIS 119090 (S.D.N.Y. Aug. 26, 2014).... 18

Brock v. Wright, 315 F.3d 158, 165-66 (2d Cir. 2003) ...................................................... 5

CAT3 LLC v. Black Lineage, Inc., 164 F. Supp. 3d 488, 496 (S.D.N.Y. January 12, 2016) 25, 27

Channel Master Corp. v. Aluminium Ltd. Sales, Inc., 4 NY2d 403, 407 (1958) ...................... 16

City of Canton v. Harris, 489 U.S. 378 (1989) ........................................................... 4, 10

City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) .................................................. 4

Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011) ..................................................... 10

George v. Ford Motor Co., No. 03 Civ. 7643, 2007 U.S. Dist. LEXIS 61453, 2007 WL 2398806,
    at *7 (S.D.N.Y. Aug. 17, 2007) ............................................................................. 19

Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 78 (2d Cir. 2002). ......................... 3

Jane Doe 1 and Jane Doe 2 on behalf of themselves and similarly situated women, v. The City of
    New York and Benny Santiago, 15 Civ. 3849 (AKH) (S.D.N.Y.) ..................................... 7

Jenkins v. City of New York, 478 F.2d 76, 94 (2d Cir. 2007). ........................................... 10

JMD Holding Corp. v. Congress Financial Corp., 4 NY3d 373 (2005) ................................. 20

John v. City of New York, 11 Civ. 5610 (RPP) (S.D.N.Y.) ................................................ 29

Johnson v. Wright, 412 F.3d 398, 404 (2d Cir. 2005). .................................................... 5

Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998. .................................................. 14

Mastroianni v. Cty. of Suffolk, 91 N.Y.2d 198, 203, (1997). ............................................. 18

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). ................ 3

McGregor v. Jarvis, No. 9:08-CV-770 (GLS/RFT), 2010 U.S. Dist. LEXIS 97408 (N.D.N.Y.
    Aug. 20, 2010) ................................................................................................... 13

Monell v. Dep't of Social Servs., 436 U.S. 658 (1978). ............................................... 4, 10

New York University v. Continental Ins. Co., 87 NY2d 308, 318 (1995) .............................. 16

Pena v. Deprisco, 432 F.3d 98, 108 (2d Cir. 2005) ...................................................... 18

Pucino v. Verizon Comme'ns, Inc., 618 F.3d 112, 117 (2d Cir. 2010) .................................. 3

Purgess v. Sharrock, 33 F.3d 134 (2d Cir. 1994). ........................................................ 14

Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980) .................... 3

Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.3d 99, 107 (2d Cir. 2002) ........ 24

Riss v. New York, 22 N.Y.2d 579, 583, (1968) ........................................................... 17

Standt v. City of New York, 153 F. Supp. 2d 417, 422 (S.D.N.Y. 2001) .............................. 3

Tafari v. City of New York, 13 Civ. 1733 (PAE) (S.D.N.Y.) .............................................. 28

Taylor v. City of New York, 03-CV-6477 (RLC), 2006 WL 1699606 at *7 (S.D.N.Y. June 21,
    2006) ..................................................................................................... 4, 27, 28, 29

Uhlrig v. Harder, 64 F.3d 567, 572 (10th Cir. 1995 ...................................................... 18

Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995)..................................... 4
Vermette v. Kenworth Truck Co., 68 NY2d 714, 717 (1986)..................................... 20
Zuckerman v. City of New York, 49 N.Y.2d 557, 427 N.Y.S.2d 595, 404 N.E.2d 718 (1960)... 20

**Statutes**
28 U.S.C. § 1367............................................................................................. 14
28 U.S.C. § 2074(a) .......................................................................................... 25
28 U.S.C. §1746............................................................................................... 20
28 U.S.C. §2074(a) ........................................................................................... 25
42 U.S.C. §1983:....................................................................................... 4, 13, 14, 15
Fed. R. Civ. P. 37(e)(2)...................................................................................... 25
New York Penal Law §130.05.............................................................................. 13

**Other Authorities**
§3-02(e)(7) ..................................................................................................... 15
New York City Administrative Code §9-130(d) ..................................................... 9
NYC Bd. of Corr. Health Care Minimum Standards §3-02(b)(7) .............................. 15

**Rules**
Fed. R. Civ. P. 30(b)(6)....................................................................................... 8
Fed. R. Civ. P. 56(c) .......................................................................................... 3
Fed. R. Civ. P. 56(e) .......................................................................................... 4

## PRELIMINARY STATEMENT

Plaintiff M.T. submits this Memorandum of Law in opposition to Defendants' Rule 56 motion seeking partial summary judgment[1] and in further support of her motion seeking sanctions for Defendants' spoliation of crucial evidence before it could be provided to Plaintiff. For the reason set forth *infra*, summary judgment must be denied and Plaintiff must be granted preclusion, an adverse inference jury instruction, and attorney's fees as the reasonable sanctions for Defendants' destruction of relevant and material evidence.

Plaintiff implores this Court to impose severe sanctions against the City for the spoliation of evidence. The City failed to preserve important video evidence from the cameras located in the Robert N. Davoren Complex ("RNDC"), including but not limited to the entrance into the Clinic and the hallways to/from Control Room 2, which would have definitively identified Defendant, C.O. Louis Galan's ("Officer Galan") whereabouts at the time of the subject incident, and definitively establish an accurate timeline of events. The deposition and documentary evidence has remained contradictory in numerous material aspects: For example, Plaintiff testified that she was raped by Officer Galan in a staff-only room within the Clinic; while Officer Galan testified that he has *never* been in the Clinic. Video footage from fixed cameras affixed to the ceiling of the hallway that spans between Control Room 2 and the Clinic entrance and exit (hereinafter referred to as the "Corridor") would cure these contradictions as this is the only place to enter/exit the Clinic. Despite receiving timely notice of the rape, location of the rape, and officer involved, Defendants inexcusably failed to preserve key video recordings, thereby severely prejudicing Plaintiff's rights.

---

[1] Plaintiff has stipulated to withdraw several federal and state law claims alleged in her Complaint. Defendants do not seek summary judgment as to Plaintiff's §1983 claims against Officer Galan.

1

Additionally, Defendants violated their own written policies by failing to perform a rape kit on Plaintiff and preserve physical evidence despite being put on notice of the rape within 96 hours of it occurring. As a result of Defendants' willful destruction and neglect of their own procedures, policies and directives, they spoliated crucial physical evidence, to the severe prejudice of Plaintiff.

As to Defendants' motion seeking partial summary judgment, the existence of genuine issues of material fact preclude Defendants' entitlement to such relief. Defendants are not entitled to dismissal of Plaintiff's Monell claims as the evidence when viewed in the light most favorable to the plaintiff demonstrates that Officer Galan's sexual assault of Plaintiff was part of a culture of sexual victimization at Rikers Island by corrections officers against prisoners. This culture was allowed to subsist and survive due to the City's deliberate indifference to the sexual abuse of prisoners in its custody and control. This is evidenced not only by statistical data, incidence rates compared to other jails across the country, but also the feckless investigation into these types of incidents, as evidenced by the Department of Investigation's cursory investigation into Plaintiff's allegations against Officer Galan and prior incidents involving Officer Galan.

Likewise, Defendants are not entitled to summary judgment as to Plaintiff's state law claims as material issues of fact exist as to those claims as well. For the reasons set forth more fully herein, Defendants' motion must be denied in its entirety.

## COUNTER-STATEMENT OF FACTS

The Court is referred to Plaintiff's Counter-Statement of Facts contemporaneously filed herewith for a full statement of facts.

## ARGUMENT

## LEGAL STANDARD

Defendants seek summary judgment as to Plaintiff's <u>Monell</u> claim and all state law claims. Their boilerplate arguments do not establish the absence of material factual issues to warrant summary judgment. *See*, <u>Pucino v. Verizon Commc'ns, Inc.</u>, 618 F.3d 112, 117 (2d Cir. 2010). "The Second Circuit has repeatedly noted that as a general rule, all...the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." <u>Standt v. City of New York</u>, 153 F. Supp. 2d 417, 422 (S.D.N.Y. 2001) (citations and quotation marks omitted). "[N]ot only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them." <u>Harris v. Provident Life & Accident Ins. Co.</u>, 310 F.3d 73, 78 (2d Cir. 2002).

Summary judgment should only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Accordingly, trial courts should act "with caution in granting summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *See*, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 n.10 (1986). "Thus, when the party against whom summary judgment is sought comes forth with affidavits or other material obtained through discovery that generates uncertainty as to the true state of any material fact, the procedural weapon of summary judgment is inappropriate." <u>Quinn v. Syracuse Model Neighborhood Corp.</u>, 613 F.2d 438, 445 (2d Cir. 1980).

Where, as here, the nonmoving party "set[s] forth specific facts showing there is a genuine issue for trial," *see*, Fed. R. Civ. P. 56(e), summary dismissal must be denied.

## I.   PLAINTIFF HAS ESTABLISHED UNCONSTITUTIONAL PRACTICES BY THE CITY OF NEW YORK PRECLUDING SUMMARY JUDGMENT

In order to establish the liability of a municipality for the unconstitutional acts of a municipal employee, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy. Monell v. Dep't of Social Servs., 436 U.S. 658 (1978) *see also*, Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995). If an issue of fact exists as to the policy or its impact on plaintiff, summary judgment is inappropriate. *See, e.g.*, Taylor v. City of New York, 03-CV-6477 (RLC), 2006 WL 1699606 at *7 (S.D.N.Y. June 21, 2006) ("[P]laintiff has provided more than enough proof to create an issue of fact as to the existence of an unconstitutional practice and on the issue of whether this practice caused him harm.").

A plaintiff may demonstrate the existence of a municipal policy or practice by showing, amongst other ways, (a) an official policy, (b) that the acts of the municipal agent were part of a widespread practice that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware, or (c) a municipality's failure to provide adequate training or supervision of its agents. *See*, City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); *see also*, Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397 (1997) (a municipality's failure to provide adequate training or supervision of its agents); City of Canton v. Harris, 489 U.S. 378 (1989). Furthermore, the Second Circuit has recognized that "under the Supreme Court's decision in Monell a municipality may be found liable for constitutional violations under 42 U.S.C. §1983 even if no named individual defendants are found to be liable." Barrett v. Orange County Human Rights Comm'n, 194 F.3d 341, 350 (2d Cir. 1999).

As discussed below, viewing the evidence in the light most favorable to Plaintiff, she has raised material issues of fact as to whether the Department of Correction had a widespread custom and practice of sexual victimization of prisoners by officers and that the City's deliberate

4

indifference to same was the moving force being the constitutional violations she endured by Officer

Galan. Plaintiff has also raised material issues of fact as to the City's failure to train and supervise

their staff. Accordingly, summary judgment as to Plaintiff's claims against the City must be denied..

A.  Officer Galan's Rape of Plaintiff Was Part of a Long-Standing, Well-Reported, Widespread
    Practice of Sexual Victimization at DOC Facilities

Defendants misapply the law regarding what constitutes a "custom or usage" when

determining the widespread practice of rape and sexual assault of inmates by correctional officers

within the City of New York.

A municipal defendant can be found liable under §1983 where unconstitutional acts are the

result of a policy promulgated by the defendant, Brock v. Wright, 315 F.3d 158, 165-66 (2d Cir.

2003), as well as in the municipality's application of a policy in such a way that amounted to

deliberate indifference. Johnson v. Wright, 412 F.3d 398, 404 (2d Cir. 2005).

In 2003, Congress passed the Prison Rape Elimination Act upon making numerous findings

including the following that are specifically relevant to this action, namely: "...Most prison staff are

not adequately trained or prepared to prevent, report, or treat inmate sexual assaults."; "Victims of

prison rape suffer severe physical and psychological effects that hinder their ability to integrate into

the community and maintain stable employment upon their release from prison."; Members of the

public and government officials are largely unaware of the epidemic character of prison rape and the

day-to-day horror experienced by victimized inmates." Prison Rape Elimination Act of 2003, 108

P.L. 79, 117 Stat. 972, 973, 108 P.L. 79, 2003 Enacted S. 1435, 108 Enacted S. 1435.

Section 115.11(a) required the DOC to install a comprehensive zero tolerance policy that

applies to all staff, volunteers, and contractors in all facilities. Section 115.31(a) required the DOC to

train all of its staff in ten distinct areas. Section 115.34(a), (b), (c) and (d) required that Investigations

staff involved in the investigation of sexual abuse complaints have specific types of specialized training in addition to the PREA staff training requirements. Section 115.35(a), (b) and (c) required specialized training for medical and mental health care practitioners. As set forth below, DOC's policies and training were not in compliance with PREA.

In June 2015, the Moss Group, federally-funded consultants retained by the City earlier that year to assess its lack of PREA compliance[2], delivered an 86-page, highly-critical report entitled "Sexual Safety Assessment Report" to the Department of Correction. See, Ex. J. Therein, the Moss Group found that "there was no NYC DOC PREA policy," there was no PREA Compliance Manager as required, and that the policies that were in effect had "several gaps." Id., p. 11-12. The Report also found that DOC's training of staff was not PREA-compliant and was deficient in that "there appeared to be little PREA-specific training actually occurring...per the Training Director and staff interviewed;" the Prevention of Inmate Sexual Abuse pre-service training held for DOC officers focused "on staff-on-staff harassment only as well as EEO requirement;" and required refresher training was not occurring. Id., p. 13. With regard to training of investigators, the Moss Group found that they too were untrained, id., p. 14, which is evident from Investigator Zdrojeski's investigation into the subject incident, as discussed below. The Moss Group also found that "[t]here was no documentation that Corizon staff who might conduct forensic examinations have received appropriate training to conduct such examinations...[or] proper certification." Id., p. 15.

Additionally, the Moss Group's Report found that the DOC's methods for reporting abuse by victims and DOC staff were too few, confusing, ineffective and/or broken (e.g., hotlines did not work

[2] In Acting First Deputy DOC Commissioner Dina Simon's December 15, 2015 statement to the New York City Council Committee on Fire and Criminal Justice Services, she stated that "...earlier this year, DOC partnered with The Moss Group. The Moss Group is a leading expert in the implementation of PREA. They provide technical assistance, operational assessments, and staff training. The Moss Group has been assessing our system and helping us create a plan to come into compliance. Our partnership with the Moss Group will continue for the next two years." See, Ex. K. In her statement, Ms. Simon admits that three years after Plaintiff's rape the City is still "working to come into compliance with PREA requirements." Id., p. 4.

6

or were constantly busy, wrong telephone numbers posted, calls routed to wrong locations and then hung up on, no one available to receive calls from non-English speaking inmates, staff failed to report abuse disclosed by 16-17 year olds to local or state child protective services, etc.) Id., pp. 16-21. Plaintiff refers the Court to the Moss Group Report for further findings of DOC's non-compliance with PREA in terms of policy and training in general, and specifically RNDC. Id., pp. 54-55.

In addition to the Moss Group's findings, Letitia James, the Public Advocate for the City of New York, recently submitted a Declaration and Brief (See Ex. A) in support of the class plaintiffs in Jane Doe 1 and Jane Doe 2 on behalf of themselves and similarly situated women, v. The City of New York and Benny Santiago, 15 Civ. 3849 (AKH) (S.D.N.Y.), wherein she articulates the profound and abhorrent incidence of sexual assault and victimization of inmates on Rikers Island based, in part, upon a 2011-12 survey conducted by the U.S. Department of Justice entitled "Sexual Victimization in Prisons and Jails Reported by Inmates, 2011-12" (the "Survey"). See, Ex. B. In her Complaint, Plaintiff pleaded that "According to [the Survey], prisoners at Rikers Island facilities, RNDC included, report a significantly higher prevalence of sexual victimization than the national average. According to this survey, 3.1% of RNDC inmates reported staff sexual victimization, compared to 1.8% nationally." See, Compl. 75. Plaintiff also pleaded that "...a report by the United States Attorney's Office for the Southern District of New York detailing the results of a recent Rikers investigation conducted pursuant to the Civil Rights of Institutionalized Persons Act, expressed 'concern that DOC may be under-reporting sexual assault allegations.' This under-reporting of staff-on-inmate sexual assault suggests that the numerous instances in which correctional staff on Rikers Island have been investigated and convicted of criminal sexual misconduct against inmates represent only a small fraction of the actionable sexual abuse that occurs on Rikers Island." Id., 76.

The aforestated findings by the Moss Group, Public Advocate Letitia James, the U.S. Department of Justice, and the United States Attorney's Office for the Southern District of New York are consistent with the testimony of Defendants' designated Fed. R. Civ. P. 30(b)(6) witness, Sean Cussen, Deputy Director of the Division of Investigation for the City of New York, who testified that at the time of Plaintiff's rape in 2012, and even up to present day, RNDC is not PREA-compliant. See, Def. Ex. B, p. 58. Mr. Cussen also admitted that although he could identify hotlines for the inmates to report abuse and violence, he could not say for sure if they worked in 2012. Id. at p. 59. Mr. Cussen also testified that the City's "best practices" after the report of a rape is to obtain a sexual assault evidence kit or "rape kit" within at least 120 hours of the incident (the Plaintiff's rape was reported within 24 hours and yet a rape kit was not taken). Id. at pp. 30-31. Mr. Cussen also testified that it is DOC policy that shortly after a rape is reported, a tour commander is notified, video of the area is reviewed, and that certain supervisors had the ability to burn the video. Id. at pp. 27, 30-31. None of these things happened following Plaintiff's rape.

Further, a recent NY Metro article (February 7, 2016) cites the continuing conditions at Rikers Island with regard to sexual abuse between guards and inmates, as well as, the exchange of contraband (See Ex. C). Correction Officer Nicole Bartley was "busted" by a drug sniffing dog, which found marijuana that was exchanged for sexual favors with an inmate at Rikers. "Such corrupt and indecent actions contribute to the troubling conditions on Rikers Island, and undermine safety and security there," stated District Attorney Darcel Clark to Metro. The article goes on to note that 26 corrections employees were caught in corruption since the "DOI began probing corruption at Rikers in 2014."

Defendants' reliance on its 2008 directive entitled "Preventing Inmate Sexual Abuse" (Directive 5010R-A) is unavailing as the Moss Group found it to not be PREA-compliant or

followed. Despite this and other policies purportedly in place, the quantitative and qualitative assessments discussed above demonstrate that DOC has been deliberately indifferent to the sexual victimization of prisoners, resulting in higher than average (and escalating) incidence of sexual abuse, quid pro quo between officers and prisoners for contraband, and other improprieties between officers and prisoners evidencing the widespread custom and practice necessary to find the City liable.

The City's failure to comply with federal law and install the required policies, systems, methods and training led to the constitutional violations suffered by Plaintiff. Further, the City continues to ignore and comply with its own law in that New York City Administrative Code §9-130(d), requires, effective July 1, 2016, the DOC to post on its website a report for the prior calendar year containing information pertaining to, among other things, allegations of sexual abuse of an inmate by staff and substantiated incidents of sexual abuse of an inmate by staff. Again, the City has yet to comply with itself.

For the reasons set forth above, summary judgment motion must be denied as genuine issues of fact exist.

B. Defendants' Failure to Train And Supervise Corrections Officers Who Sexually Assault Inmates Gives Rise to a Level of Deliberate Indifference of the City

To impose liability on a municipal defendant for having a deficient training program that amounts to "deliberate indifference," as required for a Monell claim, a plaintiff must show that a policymaker knows to a moral certainty that its employees will confront a given situation, that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or there is a history of employees mishandling the situation, and that the wrong choice by the employee will frequently cause the deprivation of a citizen's constitutional

rights." Jenkins v. City of New York, 478 F.2d 76, 94 (2d Cir. 2007) (internal quotation marks omitted); *see also*, City of Canton v. Harris, 489 U.S. 378 (1989) (finding that the viability of a failure to train claim is dependent on a violation of a federally-protected right, inadequate training of employees, and causation between the inadequate training and the plaintiff's injury).

A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of establishing a failure to train claim, *see*, Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011) (*quoting* Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 409 (1997)); however, the Supreme Court has "left open the possibility that, 'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference." Id. at 1361 (*quoting* Bryan Cty., 520 U.S. at 409)). For example, the Court has hypothesized that a municipality might be liable if it failed to train armed police officers "at all" regarding "the constitutional limits on the use of deadly force." Id. at 1363; see also, id. at 1361 ("Given the known frequency with which police attempt to arrest fleeing felons and the 'predictability that an officer lacking specific tools to handle that situation will violate citizens' rights,' the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the 'highly predictable consequence,' namely, violations of constitutional rights.") (*quoting and discussing* Bryan Cty., 520 U.S. at 409).

At his deposition, Officer Galan testified that despite being handed various directives and refreshers in a single yearly training, with regard to a variety of topics including contraband and sexual contact with an inmate, there is no written documentation or certification that any of the officers actually completed this training. (See Def. Ex. D Galan pp. 75-77).

Further, during an ongoing investigation by the City's DOI, surrounding the sexual assault,

people of authority don't suspend the potential rapist, but instead, they transfer him to "another facility as soon as possible" (See Ex. D). The City would rather have a person suspected of raping an inmate work somewhere else, at risk to other inmates, than to be suspended or removed from the very type of environment where he has done the most harm.

As stated in the previous section, the policies and procedures proffered by the City have done next to nothing to curb sexual abuse of inmates by their corrections officers. Annual reports are released regarding the sexual abuse of female inmates, and Public Advocates put policymakers on notice. Also, the potentially deterring threat of an investigation by the DOI is nullified as the DOI's so-called investigation omits the questioning of the accused rapist and the questioning of others involved. The DOI completely fails to obtain, collect, and review any and all physical evidence related to the incident, and then closes the case completely on a whim without any conclusive evidence either way. The personnel conducting the investigations, particularly on the subject incident, had no experience with sexual assault cases before, and partook in no courses or review of manual or handbook.

For these reasons, the Defendants cannot meet their burden to prove that no issues of fact exist to warrant summary judgment, and therefore, their motion should be denied.

C.    The City's Deliberate Indifference to Sexual Victimization of Prisoners by Officers Is Evident in Its Investigations.

Defendants allege that Plaintiff seeks to recover due to DOI Investigator Zdrojeski's inadequate investigation; however, that is not the case. Rather, the inadequacy of the investigation (and training of its investigators) is further evidence of DOC's deliberate indifference to the pattern and practice of sexual victimization by its officers against prisoners, for had adequate (or at the least, mildly credible) investigations been conducted following prior reported incidents involving other

11

prisoners, then it would be a deterrent to future offenders and would stem the tide of sexually abusive conduct against prisoners. DOC's failure to interview witnesses, interview the alleged offender, collect physical evidence from the scene and Plaintiff, perform a rape kit, collect video recordings and logbooks, or perform any of the other ordinary functions investigative agencies are generally tasked to do, is confirmation of the cavalier attitude DOC had toward such prisoner claims in 2012 and to date.

DOI Investigator Kate Zdrojeski testified to being very inexperienced at the time of the investigation (Ex. E of Spoliation Motion pg. 14). She failed to interview or even identify key persons surrounding the allegations, including Officer Galan, Tammy Thrash (a DOC employee connected to the iPod), and even failed to identify or contact the Tour Commander in charge during the time of the rape; in direct violation of the City's directives (Id. at pgs. 17, 25, 17). Her reasoning was based on her superiors' similar reasoning that interviewing C.O. Galan would be a "fruitless exercise" as he would just deny everything (Id. at pg. 70). When asked whether if she were to request videos of the Corridor leading to the Clinic, would she have done it within 60 days of the incident, she replied "yes" that she would have (id. at pg 129); however, she failed to do so, despite further allegations by Plaintiff that she was threatened by other officers within 30 days after she reported the rape (Id. at 86).

For these reasons, the inept investigation by the City's DOI further supports the Plaintiff's claims that the City engages in a widespread custom and practice of allowing rape, sexual assault, abuse, and other heinous acts to continue in their correctional facilities; thereby giving rise to § 1983 violations of Plaintiff's rights. It also shows the little weight given to any evidence or document collection retention policy in the midst of an investigation, which eventually leads to the spoliation of

evidence. Accordingly, Defendants' motion for summary judgment should be denied for failing to negate all issues of triable fact.

## II.     DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS OF SEXUAL ASSAULT AND RAPE

Defendants inaccurately contend that Plaintiff seeks to recover under New York Penal Law §130.05. Rather, that section of the Penal Law is set forth in the Complaint merely to articulate that, as a matter of law, Plaintiff was legally incapable of consenting to have any type of sex with Officer Galan. New York Penal Law §130.05 is recognized by the courts to indicate an inmate's lack of consent. *See,* McGregor v. Jarvis, No. 9:08-CV-770 (GLS/RFT), 2010 U.S. Dist. LEXIS 97408 (N.D.N.Y. Aug. 20, 2010) Clearly, then, this state law claim sounds in common law assault and battery claims rather than an attempt to recover under the Penal Law.[3] As Defendants do not seek dismissal of Plaintiff's §1983 claims against Officer Galan for raping her, seemingly acknowledging issues of fact, it is curious why they move for dismissal of her common law claims relating to same.

Accordingly, Defendants' argument is without merit and there are clear issues of fact as to these claims.

## III.    CORIZON IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW CLAIMS

As stated by the Defendants, a stipulation was executed between the parties on October 5th 2016, dismissing specific claims made against the Corizon defendants, (specifically Counts II, IIII, V, and state claims III, V, and VIII). Despite this clear stipulation, Defendants now demand that the Corizon defendants be released from claims of Negligence and Negligent retention and hiring. Because there are still valid state claims against Corizon, and because they fail to meet their burden

---

[3] Plaintiff's claims are timely pursuant to N.Y. C.P.L.R. §§213-c and 215(8).

to prove that no triable issue of fact exists in these claims, the Defendants are not entitled to summary judgment as per these two state actions.

First, the Defendants rely on the <u>Marcus</u> case to attempt to dismiss the case on the basis that once federal claims are dismissed, the state claims must be dismissed under supplemental jurisdiction. <u>Marcus v. AT&T Corp.</u>, 138 F.3d 46, 57 (2d Cir. 1998). This case does not apply to the present action as the <u>Marcus</u> case relies upon <u>Purgess v. Sharrock</u>, to reach this decision, and in both cases, the judge dismissed the federal issues on the merits. <u>Purgess v. Sharrock</u>, 33 F.3d 134 (2d Cir. 1994).

Here, the parties, for reasons other than the merits, consented to withdraw certain claims, while maintaining an assortment of both federal and state claims. Pursuant to 28 U.S.C. § 1367, the state claims of Corizon's negligence and negligent retention and hiring of employees are of the same case and controversy as the remaining § 1983 federal claims[4].

As per the negligence claim, the elements of which have been cited time and time again remain as (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach. <u>Lombard v. Booz-Allen & Hamilton, Inc.</u>, 280 F.3d 209, 215 (2d Cir. 2002).

Here, the Corizon defendants operated and maintained the Clinic at the RNDC. They owed a duty to the Plaintiff and other inmates as to their well-being, health, and care, while in the Clinic. C.O. Galan raped the Plaintiff, while nurses and at least one guard were still present in the Clinic (Def. Ex. E pg. 45-46). The Corizon defendants breached their duty by failing in the operation, supervision, enforcement, maintenance, management and control of the Clinic. Due to understaffing,

---

[4] 28 U.S.C. § 1367(a) (providing that the district courts "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy"); <u>Rizvi v. Town of Wawarsing</u>, No. 15-1599, 2016 U.S. App. LEXIS 11547, at *4 (2d Cir. June 24, 2016)

lack of oversight, supervision and/or control, a prisoner under their care was raped in their facility. *See,* NYC Bd. of Corr. Health Care Minimum Standards §3-02(b)(7) ("Staffing levels in the jail clinics, jail infirmaries and prison hospital wards shall be adequate in numbers and types to insure that all standards described here are met. 'Staffing levels' refers to both clinical and correctional personnel."), §3-02(e)(7) ("Sufficient security measures shall be provided continuously in the infirmary to assure the health and safety of all inmates and health care personnel who provide services to such inmates."). As a result of Corizon's negligence, Plaintiff suffered damages while in their custody.

Additionally, the same analysis applies to the negligent retention and hiring of the nurses and employees of the Clinic that were present. The Corizon defendants owed a duty to all of their patients to hire and supervise competent staff that will maintain the Clinic as described above and report a rape that occurred while they were on duty. As a result of their negligence, and their providing the room for Plaintiff's rapist to operate, the Corizon defendants are negligent, and further negligent under *respondeat superior* in the hiring and retention of their staff for allowing this to happen, to the detriment of the Plaintiff.

## IV.      PLAINTIFF'S CLAIM FOR FRAUD MUST NOT BE DISMISSED

The state common law elements of fraud in New York are: 1) a representation of a material existing fact; 2) falsity of representation; 3) scienter, 4) reasonable reliance; and 5) damages. New York University v. Continental Ins. Co., 87 NY2d 308, 318 (1995); Channel Master Corp. v. Aluminium Ltd. Sales, Inc., 4 NY2d 403, 407 (1958).

Viewing the evidence in the light most favorable to Plaintiff, official records and statements, including log books, contraband vouchers, and incident reports, were falsified in an effort to cover up Officer Galan's wrongdoing and prevent the truth from ever coming to light. See, Compl. ¶¶186-90.

As such, material issues of fact exist that preclude the granting of summary judgment in defendants' favor.

Officer Galan was responsible for logging his whereabouts in various logbooks. During the subject tour of duty, Officer Galan made an entry in the logbook of his purported post in Control Room 2 at 23:14 on December 1, 2012 and then again at 0430 through 0600 (for a mere one and a half hours). See, Def. Ex. E, p. 51. Offier Galan fails to account for over five hours of his time, which coincidentally, coincides with Plaintiff's testimony that she was raped by Officer Galan at 2:15 a.m. and then saw him inside "the bubble" or guard post after the rape, around 4:00 a.m.

Further, the following day, Officer Galan's co-workers seized an iPod as contraband from the Plaintiff's cell. Plaintiff testified that the iPod was given to her by Officer Galan for her silence (Def. Ex. E, Pg. 53).

Based on this documentary evidence, Officer Galan made false and/or misleading, misrepresentations of material fact as to his whereabouts, and the inappropriate relationship with the Plaintiff, including a rape and the physical evidence of a gift to keep the Plaintiff quiet. Officer Galan knew that these reports and logbooks would misstate the truth to his benefit and to the detriment of Plaintiff. Additionally, these misstatements were made with malice and a complete disregard of the rights of Plaintiff as Officer Galan would be aware that an iPod is considered contraband and would subject Plaintiff to disciplinary infractions.

For these reasons, and the reasons stated above regarding preserving state claims within the same case and controversy as the Plaintiff's §1983 federal claims, Plaintiff has raised triable issues of fact that warrant denial of Defendants' motion for summary judgment.

## V.   **PLAINTIFF HAS STATED A CLAIM FOR A FAILURE TO PROTECT**

16

While generally, there is no "proper allocation" of the powers of the courts to carve out an area of tort liability for protection by officers, when officers "undertake responsibilities to particular members of the public and expose them, without adequate protection, to the risks which then materialize into actual losses" then exceptions are taken and liability can be imposed. Riss v. New York, 22 N.Y.2d 579, 583, (1968). Namely, potential liability arises from the presence of a "special relationship existing between the municipality and the injured party" Mastroianni v. Cty. of Suffolk, 91 N.Y.2d 198, 203, (1997).

The Second Circuit adopted the rule of its "sister circuit" in Pena v. Deprisco, 432 F.3d 98, 108 (2d Cir. 2005), where it held that a "state created danger" can refer to a wide range of disparate fact patterns, as in an instance of "the state's duty to protect a person from private violence when the state itself has placed that person at risk;" referring to Uhlrig v. Harder, 64 F.3d 567, 572 (10th Cir. 1995) (A special relationship exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual (e.g. when the individual is a prisoner or involuntarily committed mental patient)).

Here, the Defendants argue and apply the holding in Blake v. Kelly, to first, distinguish between the failure to protect as it pertains to inmate-on-inmate violence, and second, to frame the overall inquiry as "not the extent of the injuries" but instead "the existence of a substantial risk of serious harm." Blake v. Kelly, No. 12-CV-7245, 2014 U.S. Dist. LEXIS 119090 (S.D.N.Y. Aug. 26, 2014). Also cited is Gilmore v. Rivera following up with the idea that there must be evidence of a previous altercation.

Barring first the absurdity that somehow inmates deserve less protection when their attackers are guards and not other inmates, the Defendants should be reminded that this is a case of rape. The existence of a substantial risk of harm is evident by the fact that the inmates are confined to a prison,

and that their potential attacker has significant authority over them. As stated above, there is no consensual sex between guard and inmate. There had been a previous encounter between the Plaintiff and C.O. Galan, when C.O. Galan watched the Plaintiff in the showers (Def. Ex: E pg. 33-34). Plaintiff testified that she was uncomfortable by the way he was staring, that they had exchanged words, and that C.O. Galan offered contraband Id. at 38-40. Despite these instances, the Plaintiff further testified that she feared for her safety if she were to follow through and report the incidents Id. at 52.

### DEFENDANTS SHOULD BE SANCTIONED FOR
### SPOLIATION OF CRITICAL EVIDENCE IN THIS MATTER

*A. Defendants' opposition to Plaintiff's motion seeking sanctions should not be considered by the Court as it contains conclusory legal arguments predicated upon unsworn statements of unsupported facts.*

Plaintiff seeks sanctions against the City of New York for spoliation, arguing that the City destroyed video recordings of the one and only corridor leading into and out of the Clinic for the period of time preceding and following the sexual assault. Plaintiff also moved for sanctions due to the defendants' failure to preserve logbooks, perform a rape kit, and preserve physical and DNA evidence from the scene of the assault and Plaintiff's clothing. Defendants only responded to Plaintiff's motion as it relates to the video recordings.[5] Accordingly, it has conceded spoliating the logbooks and physical and DNA evidence. *See,* George v. Ford Motor Co., No. 03 Civ. 7643, 2007 U.S. Dist. LEXIS 61453, 2007 WL 2398806, at *7 (S.D.N.Y. Aug. 17, 2007) ("Defendant does not even attempt to rebut these objections, and thus appears to abandon its request.").

---

[5] During oral argument held on July 28, 2016 for Plaintiff's July 13th motion to compel the production of various discovery and for discovery sanctions pursuant to Fed. R. Civ. P. 37(a)(3) and (b)(2), defense counsel admitted "...I've requested a whole host of information. I have received information back that some of the documents were destroyed and some of the documents they had continued to search for." See, Hearing. Tr., p. 5:6-9.

Defendants' entire opposition to Plaintiff's motion is limited to the inadmissible, unsworn "Response" by defense counsel, which offers nothing more than conclusory, unattributed statements purported to be fact rather than sworn statements from knowledgeable witnesses. *See,* 28 U.S.C. §1746 (requiring sworn statements of fact to state, at minimum: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)"); *see also,* Zuckerman v. City of New York, 49 N.Y.2d 557, 427 N.Y.S.2d 595, 404 N.E.2d 718 (1960) (an "affirmation by counsel is without evidentiary value and thus unavailing"); Vermette v. Kenworth Truck Co., 68 NY2d 714, 717 (1986) ("Plaintiff's attorney's affidavit, which merely alleged in conclusory form that such proof existed but failed to tender it in opposition to the motion or to offer an excuse for such failure, was patently insufficient for that purpose."); JMD Holding Corp. v. Congress Financial Corp., 4 NY3d 373 (2005) ("A conclusory affidavit or an affidavit by an individual without personal knowledge of the facts" will not suffice.). That is not to say that the defendants have not had ample opportunity to provide actual facts from knowledgeable witnesses, but rather, as discussed below, they have purposely failed to do so time and time again.

Thus, all of the purported statements of fact set forth in Defendants' Response in Opposition to Plaintiff's Motion for Spoliation and Sanctions, including but not limited to the following examples, must not be considered by this Court as they are conclusory, speculative and/or personal opinions by defense counsel:

- "[T]he Clinic of RNDC [is] an area where there are no cameras. Out of deference to medical records privacy considerations, guidelines and law such as HIPAA, no cameras

were inside the Clinic. Thus, if there were no cameras in the Clinic, then it is impossible for any footage of the alleged rape to exist." See, Resp. p. 5.[6]

- "Plaintiff seeks sanctions for spoliation of evidence based on Defendants [sic] failure to preserve surveillance camera footage from one of the *various* corridors connecting the Clinic to the rest of RNDC." See, Resp., p. 5 (emphasis added).[7]

- "[T]he footage would have been automatically erased by March 2, 2013 at the latest, absent staff override, (DOC Policy is to retain video camera footage for 90 days, then it is automatically deleted to preserve storage space)..."[8] See, Resp., p. 5.

- "[I]n their attempt to satisfy its [sic] duty to preserve evidence for future litigation, Defendants sought to determine if relevant footage from any camera *within the Clinic*

---

[6] Despite the City's stated "deference" to patient privacy and law, it is undisputed that the Clinic of RNDC currently has cameras inside it. Following the close of discovery, the City provided a chart which seems to indicate the installation of Clinic cameras in 2015, see, Ex. L; however, not a single witness testified when the Clinic cameras were actually installed nor was any sworn statement ever provided to that effect.

[7] The Response attempts to assert possible confusion in which corridor camera footage it should have preserved and/or that preservation of the corridor camera footage would have been onerous as there were "various" corridors into the Clinic; however, Officer Galan and DOI Investigator Zdrojeski both testified that there is only one corridor into and out of the Clinic and that is the one located between Officer Galan's post at Control Room 2 and the Clinic. See, Def. Ex. D and Pl. Ex. E pg. 33. Notwithstanding, the City did not attempt to preserve any camera recordings; therefore, whether there is one corridor or twenty corridors is immaterial as no effort was made to preserve any of them.

[8] DOI Investigator Zdrojeski testified that DOC had a 60-day retention policy and the City's Rule 30(b)(6) witness, Ronald Brash, testified there is currently a 90-day video retention policy but he is unaware of the City's retention policy prior to the current protocol enacted by Mayoral Directive No. 2015-3 on November 24, 2015. See, Zdrojeski Tr., p. 129; Brash Tr., p. 28. Defendants have not produced any policy or directive which would indicate what the actual retention policy was in 2012-13, nor where the recordings were stored, nor in what format(s), nor what happens to the recordings if not flagged for preservation, nor what methodology a recording would be flagged for preservation and actually preserved, nor whether a recent search was ever conducted to obtain these recordings following Plaintiff's document requests seeking same. Contrast, Taylor v. City of New York, *infra*, fn. 8, where the defendants' designated Rule 30(b)(6) witness to testify as to the DOC's video preservation procedures testified that DOC video surveillance recordings were preserved for sixty days before being automatically deleted but defense counsel later contended in opposition to plaintiff's spoliation motion that the witness was "mistaken" in her description of the agency's procedures and claimed, without submitting any evidence in support of this contention, that it is the DOC's practice to automatically delete surveillance footage twenty days after it is recorded.

20

was available for viewing and preservation; not camera footage from within the Corridor."[9] See, Resp., p. 6.

- "Defendants allowed the footage from the Corridor to be automatically erased pursuant to record retention schedules because Plaintiff failed to give Defendants timely notice of her belief that the footage would be relevant to future litigation."[10] See, Resp., p. 9.

Aside from all of the obvious reasons why a court should not accept unsworn averments of fact from an individual without personal knowledge, the reason the lack of evidentiary support for these purported factual statements in this particular case is so outlandish is because (a) the City repeatedly refused to explicitly state same and/or provide evidence in support of same during fact discovery; (b) the City has repeatedly spoken out of both sides of its mouth on these very issues, at times representing to this Court and counsel that DOI's investigation into the matter was still pending when it had in fact been closed years prior, and at other times stating that logbooks which were

---

[9] This statement is not based upon any testimony or document in evidence whatsoever. Not surprisingly, defense counsel fails to offer its criteria for "relevance," the date(s) the City sought to satisfy its duty and by whom, the collection methods utilized, the records searched, and the results of the defendants' purported efforts.

[10] Notwithstanding defense counsel's speculation and personal beliefs as to why the Defendants "allowed the footage from the Corridor to be automatically erased," as well as her conclusory statement that the footage was erased "pursuant to record retention schedules," the City has never confirmed in writing that the footage was actually erased rather than preserved and misplaced. Plaintiff has repeatedly requested an affidavit from a person with knowledge stating that the footage was deleted; however, the defendants have consistently refused to provide same. Furthermore, there has been no testimony or evidence to support defense counsel's claim that the defendants "attempt[ed] to satisfy its burden to *preserve* evidence" (emphasis added) by seeking to determine if relevant footage from any camera within the Clinic was available for viewing and preservation. In fact, the only witness or document that indicates the defendants tried to obtain video footage was during Investigator Zdrojeski's deposition she testified that *viewing* "video of them going in and out of the Clinic" would be important to her investigation, but she could not recall whether she actually sought or viewed the video. See, Zdrojeski Tr., p. 109. Furthermore, the defendants curiously now claim to have sought camera footage from within the Clinic while maintaining that there were no cameras in the Clinic at that time. Clearly, they cannot have it both ways. Lastly, Defendants' claim that they were not provided timely notice of the potential for future litigation is discredited by Plaintiff's reporting of the incident to DOC supervisory staff within at most 3 days thereof, Plaintiff's counsel reporting the incident to DOC officials within 10 days thereof, the DOI investigation being undertaken and concluded substantively within 30 days thereof, and Plaintiff's filing of a Notice of Claim within 29-30 days thereof. Given the nature of the allegations and the City's experience with litigious prisoners, the defendants cannot credibly claim that they did not know "the footage of the Corridor would be relevant or necessary to possible litigation." Investigator Zdrojeski admitted that such footage would be useful to her investigation. Certainly, then, it would be useful to Plaintiff in a future litigation.

21

originally claimed to have been destroyed during a warehouse fire were later produced after Plaintiff filed her motion to compel, and also that there were no cameras in the corridor leading from Control Room 2 to the Clinic[11] despite Officer Galan and Investigator Zdrojeski testifying that there were and the site visit confirming that there were; and (c) the City has filibustered its way through discovery in this case, thereby prejudicing Plaintiff's rights[12], including, most recently, producing Ronald Brash as its designated Rule 30(b)(6) witness on the day before the close of fact discovery, only for Mr. Brash to testify he has no knowledge whatsoever about DOC's document and video creation and retention policies in effect prior to him being hired in 2016, see, Brash Tr., pp-5-9, nor DOC's video recording system. Id., p. 28.

As the Court is reminded, at the motion hearing held on July 28, 2016, the Court stated,

> THE COURT: ...I am deeply troubled by the fact that [defense counsel has] previously represented to me and to counsel that certain logbooks had been destroyed and it turns out that wasn't the case. In light of that, I'm certainly inclined to think that they are entitled to some discovery with respect to document retention and what did and didn't happen here, to find out what may still be available and/or to provide some discovery with respect to potential spoliation motion or sanctions motion...
>
>                \*\*\*
>
> THE COURT: ...if Mr. Hines wants a 30(b)(6) deposition with respect to document retention and/or destruction of evidence and the like, he is entitled to it. I think there is certainly a basis here to proceed on that.

See, Hearing Tr., pp. 4, 7.

---

[11] Contrast the defendants' admission in their Response that there were cameras in the Corridor with Hearing Tr., pp. 5-6 ("THE COURT: I thought there were videos of the hallway leading to the Clinic. MS. SHOFFEL: There were not.... I have pulled the records, the installation records, and I'm happy to provide those to counsel, that shows that there were no cameras installed until a couple of years later.")

[12] Plaintiff attempted to raise these issues with the Court by motion dated July 13, 2016 seeking to compel the production of various discovery and for discovery sanctions pursuant to Fed. R. Civ. P. 37(a)(3) and (b)(2), in Plaintiff's reply to the defendants' response to said motion, and at the motion hearing held on July 28, 2016. See, Ex. M.

In response to Plaintiff's motion claiming that the defendants were shirking their discovery obligations and the Court being "deeply troubled" by the City's conduct, a week later, the City designated and produced Mr. Brash as its witness to testify "concerning the Department of Corrections' document and video generation, preservation and destruction practices and policies" however, Mr. Brash's testimony was a waste of time for all involved as he had no knowledge of DOC's document and video retention, preservation and destruction and practices in effect before 2016.

Thus, there is no basis for any of the "factual" statements proffered by defense counsel as none of the defendants' own witnesses or records support same.

### B. It would be an injustice to permit the amendment to Rule 37(e) to apply in this case.

Until December 1, 2015, any party seeking an adverse inference instruction as a remedy for spoliation of evidence had to establish the three factors set forth in Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.3d 99, 107 (2d Cir. 2002): "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." This required courts to apply a negligence or gross negligence standard when determining the culpable state of mind. Effective December 1, 2015, a new Rule 37 went into effect regarding the obligations of parties to preserve electronically stored information, which, per the Advisory Committee Notes on section (e)(2) of the new Rule, provided that an adverse inference instruction is only warranted when the court finds that a spoliating party "acted with the intent to deprive another party of the information's use in the litigation," making it clear that the new Rule 37 "rejects cases such as Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.3d 99 (2d Cir.

23

2002), that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence." *See*, Fed. R. Civ. P. 37(e)(2) Advisory Committee's Note to 2015 Amendment.

In transmitting the amendments to Rule 37 to Congress, Chief Justice Roberts included an Order stating that "the foregoing amendments to the Federal Rules of Civil Procedure shall take effect on December 1, 2015, and shall govern in all proceedings in civil cases thereafter commenced and, *insofar as just and practicable, all proceedings then pending*." 2015 U.S. Order 0017 (emphasis added). Chief Justice Roberts' Order was consistent with 28 U.S.C. §2074(a), which governs transmission of new Rules of evidence or procedure to Congress, which provides that, "the Supreme Court shall not require the application of [new Rules] to…proceedings then pending to the extent that, *in the opinion of the court in which such proceedings are pending, the application of such rule in such proceedings would not be feasible or would work injustice, in which event the former rule applies.*" 28 U.S.C. § 2074(a) (emphasis added); *see,* <u>CAT3 LLC v. Black Lineage, Inc.</u>, 164 F. Supp. 3d 488, 496 (S.D.N.Y. January 12, 2016). Thus, for courts assessing whether to impose sanctions for a party's alleged spoliation of electronically stored information in a case filed before December 1, 2015 (this action was filed on August 25, 2015), a preliminary question is whether it would be unjust or impracticable to apply Amended Rule 37(e). As the subject incident, notice of incident, investigation, notice of claim, spoliation, and commencement of this action all occurred prior to when the new Rule 37(e) went into effect, it would be unjust to apply the amended rule in deciding this motion; justice requires this Court to use the former Rule 37 standard.

Defendants claim that under the new Rule 37(e), Plaintiff is not entitled to any relief for their spoliation of evidence as the City's failure to preserve the video recordings was due to automatic deletion and not intentional conduct. However, this argument is belied by several key realities: (1) the 2015 Amendment to Rule 37(e) was obviously not in effect in 2012 when the City's duty to

preserve arose and, therefore, it would be an injustice to permit the City to avert liability for failing to comply with the law in effect at that time[13]; (2) the City has never definitively stated that the subject video recordings are in fact "electronically stored" as opposed to video cassette tapes and thus the 2015 Amendment may not apply at all[14]; and (3) the City has never definitively stated (by an individual with personal knowledge rather than by counsel) that the subject video recordings were in fact automatically deleted as opposed to being never searched for and/or unable to locate.

Even assuming *arguendo* that the video recordings were electronically stored and not cassette tapes, it is not disputed that the City failed to suspend its routine practice of destroying video surveillance recordings at Rikers Island in this instance. It is also not disputed that the City failed to preserve any of the video surveillance recordings depicting the one and only corridor leading into and out of the subject Clinic area for the date and time Plaintiff alleges to have been raped by Officer Galan. It is also not disputed that, had those recordings been preserved, they would depict persons entering and leaving the Clinic, more specifically, whether Officer Galan entered and/or exited the Clinic during the time period in question or was, as he claims, at his post in Control Room 2. It is also not disputed that, had those recordings been preserved, they would have either confirmed or contradicted Plaintiff and Officer Galan's testimony.

---

[13] Despite the Second Circuit's decision in <u>Residential Funding Corp. v. DeGeorge Financial Corp.</u>, 306 F.3d 99 (2d Cir. 2002) (a party is found to have acted with a sufficiently culpable state of mind when "evidence was destroyed knowingly, even without intent to breach a duty to preserve it, or <u>negligently</u>.") (internal quotations omitted) (emphasis in original), the <u>Zubulake v. UBS Warburg, LLC</u>, 220 F.R.D. 212 (S.D.N.Y. 2003) decision a year later, and the 2006 Amendment to Rule 37 to add Subdivision (f) [Advisory Committee Note: "Good faith in the routine operation of an information system may involve a party's intervention to modify or suspend certain features of that routine operation to prevent the loss of information, if that information is subject to a preservation obligation...The good faith requirement of Rule 37(f) means that a party is not permitted to exploit the routine operation of an information system to thwart discovery obligations by allowing that operation to continue in order to destroy specific store information that it is required to preserve."], the City, by its own admission, failed to take any measures to preserve the subject video recordings, make a copy of same, or take any action whatsoever to prevent the loss of these critical recordings.

[14] If the subject videotape(s) do not constitute "electronically stored information" within the meaning of Rule 37(e), then the amendment of Rule 37(e) is beside the point.

25

Moreover, the amendment to Rule 37(e) has no relevance to Plaintiff's claim of spoliation of the physical and DNA evidence of the incident, which the City's Response utterly fails to address, as these are not "electronically stored information."

Lastly, even if Amended Rule 37(e)(2) were to apply *and* the Court determined that the defendants did not act "with the intent to deprive" Plaintiff of use of the video recordings, Plaintiff is still entitled to relief sufficient to "cure the prejudice" under Rule 37(e)(1). In <u>Cat3</u>, *supra*, the Court found that preclusion and an award of costs and attorney's fees was warranted for a plaintiff's alteration of email addresses in documents (that were otherwise still available to the parties), and that said sanction was consistent with Rule 37(e)(1). <u>Cat3</u>, 164 F. Supp. 3d 502. As other copies of the subject video recordings are not available to Plaintiff, a harsher sanction is warranted in this matter.

C.    *The Department of Correction has a pattern and practice of destroying video recordings as they have no written policy or procedure with respect to retention and preservation.*

In <u>Taylor v. City of New York</u>, 12 Civ. 5881 (RPP) (S.D.N.Y.), the Hon. Robert P. Patterson, Jr., U.S.D.J., "[h]aving reviewed and considered the correspondence" from plaintiff and defendants, issued an Order concluding that "no written policy or procedures exist at the Department of Corrections, with respect to the retention and preservation of video recordings of assaults and other similar incidents." <u>See</u>, Ex. ___, Order, Mar. 13, 2013, ECF No. 16. Thereafter, and upon the plaintiff's motion seeking spoliation sanctions due to the defendants' destruction of a three-hour video recording, Judge Patterson found that the defendants breached their preservation duty when they edited the original recording into two four-minute segments they found relevant and then destroyed the original recording. *See*, <u>Taylor v. City of New York</u>, 2013 U.S. Dist. LEXIS 12659 (S.D.N.Y. 2013). As a sanction for their spoliation of evidence, the defendants were precluded from testifying about what was observed when they reviewed the full video, the plaintiff was granted an

adverse inference instruction permitting the jury to presume the deleted footage would have corroborated plaintiff's account, and plaintiff was awarded attorney's fees and costs in connection with the motion.

As here, the defendants in <u>Taylor</u> fruitlessly argued that they did not have a duty to preserve the video in anticipation of litigation and the court soundly rejected that argument given the facts of the case and the DOC's experience with prior litigation. Judge Patterson held that the defendants had a duty to preserve all potentially relevant footage in anticipation of a lawsuit and that the duty arose after the plaintiff met with a DOI investigator within a week of the incident. <u>Id</u>., at *21-22 ("Defendants should have reasonably anticipated that Plaintiff would file a lawsuit against the DOC for failing to protect him in connection with the events that had taken place in Pen B-4 because the DOC has documented that, in the hundreds of other instances where inmates have been injured while in DOC custody, lawsuits by the injured inmates against the agency have invariably ensued.") (*citing* DOC's "Litigation Tracking Compilation").

Similarly, in <u>Tafari v. City of New York</u>, 13 Civ. 1733 (PAE) (S.D.N.Y.), the Hon. Paul A. Engelmayer, U.S.D.J., stated, "the Court is troubled by....the apparent lack of any document or evidence-preservation protocols put in place by defense counsel or DOC counsel since the filing of this lawsuit...At Monday's conference, defense counsel and [DOC liaison] Mr. DeCarlo are directed to be prepared to address...all steps taken to date, including the dates these steps were taken, to preserve potentially relevant evidence, including but not limited to footage from security or other video cameras. Counsel should be prepared to describe DOC's retention policies with regard to security cameras at the Rikers Island facility." <u>See</u>, Ex. O, Order, May 30, 2013.

Likewise, in <u>John v. City of New York</u>, 11 Civ. 5610 (RPP) (S.D.N.Y.), Judge Patterson sanctioned the defendants for spoliation of evidence where they failed to preserve and destroyed

video recordings depicting an inmate-on-inmate assault "a month *after* [receipt of a letter from the Legal Aid Society notifying a DOC Deputing Commissioner about the incident and requesting an investigation], *after* the Notice of Claim was filed, and *after* DOC supervisors were informed of the beating and the severe brain injuries that Mr. John suffered as a result." See, Ex. P, Mem. Law, pp. 1-2; Minute Entry, March 28, 2012 ("Plaintiff's motion for sanctions is granted.").

Here, Plaintiff met with a DOI Investigator within one day of the incident and then, by counsel, emailed DOC's "Constituent Services" to report the incident within 10 days of it occurring. Accordingly, the defendants' duty to preserve arose within their retention period (even assuming the twenty-day period mentioned in the Taylor footnote). Moreover, as DOC was contacted by Plaintiff's legal counsel they were on notice of the potential for future litigation, and Investigator Zdrojeski's stated belief that video of people coming into and out of the Clinic from the Corridor would be relevant, the defendants had a clear to obligation to search for and preserve all recordings. Based upon the history of this case and other similar cases discussed above (of which there are presumably many more), it is apparent that no amount of notice, relevance or acknowledged duty would have prevented the defendants from destroying the subject video recordings. Defendants' failure to preserve these recordings has severely prejudiced Plaintiff, just as their prior destruction of video evidence prejudiced those plaintiffs.

## CONCLUSION

Upon the facts and the law herein, the plaintiff respectfully requests that this Court deny Defendants' motions in their entireties as Plaintiff's evidence clearly raises material issues of fact which require a jury, together with such other and further relief as this Court deems just and proper.